Sᴛᴀᴛᴇ ᴏғ Tᴇɴɴᴇssᴇᴇ ex rel.
Rᴏʙᴇʀᴛ M. Kɪsᴀʙᴇᴛʜ et al.

(*Knoxville,* September Term (May Session), 1959.)

Opinion filed September 9, 1960.

W. E. Badgett, Knoxville, for appellants.

Hodges, Doughty & Carson, Knoxville, Fred L. Myers, Newport, for appellees.

Mr. Justice Burnett delivered the opinion of the Court.

This is a mandamus case. The Chancellor mandamused the Quarterly County Court of Cocke County, Tennessee, requiring the court (a majority of the court refused action) to issue bonds for high school and elementary school purposes in compliance with a referendum that the court had previously ordered and in which referendum there was a favorable vote for the issuance of these school bonds. From this action of the Chancellor the majority of the County Court have appealed, filed briefs and assignments of error. Arguments by both sides have been heard, and we after studying the matter carefully have the matter for disposition. As a result of a recommendation being made to the County Court by the County Board of Education that it was necessary to construct a new high school and make repairs to some elementary schools of the county to keep the "A" rating of the schools, the County Court by resolution on October 13, 1958, submitted to the voters of the County the question of whether or not the bonds necessary for this purpose should be issued. The vote was held on November 4, 1958, and there was a favorable response to the issuance of the bonds by only 21 votes. The County Court after this vote considered questions of this referendum at one meeting, referred it to another date; at which time the County Court again considered the question and declined to vote for the issuance of the bonds.

Section 49-201, T.C.A., and subsequent sections are sections in reference to the county government of the counties of this State. Section 49-201, T.C.A., sets forth the duties of the Quarterly County Courts of this State with reference to the question of education. The statute provides that:

"The duties of the quarterly county court *shall be*:

\* \* \* \* \* \* \* \*

"(5) To submit to the voters of the county, at any regular sessions, or at any special session called for that purpose, the proposition to issue bonds for the purpose of purchasing grounds, erecting and furnishing school buildings, and, *upon the affirmative vote of the majority cast in said election, to issue said bonds in accord therewith."* (Emphasis ours.)

It was under this quoted sub-section that the resolution calling for the vote of the people of the county was first issued. After this vote the court refused to follow the definite mandate of the underscored portion of the statute quoted. In other words, after a vote has been had by the people, if this vote is in the affirmative in favor of the issue then under the said Act it becomes the duty of the court "to issue said bonds in accord therewith." Based on this positive mandate of the statute law the mandamus herein was issued.

There are a number of assignments, and the argument is varied herein, but the sole question revolves around the question of whether or not the majority of the county court had a discretion as to whether or not these bonds should be issued after submitting the matter to a vote of the people and having an affirmative reply thereto, or whether or not their act in issuing bonds as set forth in the resolution and affirmatively voted on was a ministerial act or duty. It is the universally recognized rule that mandamus will only lie to enforce a ministerial act or duty and will not lie to control a legislative or discretionary duty. *Dietler v. Kincannon*, 151 Tenn. 652, 270 S.W. 984. The authorities likewise are uniform in recog-

nizing the fact that an act is ministerial, in the sense that we are talking about, when there is no room for the exercise of discretion because the act is a positive command of the law as above indicated by the statute in question. When we come to distinguish a ministerial act from a discretionary act the question is not always easy of solution. One involves the exercise of judgment and the other merely the carrying out the command of law. The best answer to the question of distinguishing between a discretionary and a ministerial duty that we have found in our study of the matter is contained in 55 C.J.S. Mandamus sec. 63, page 101, where it is said:

"* * * where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial, but where the act to be done involves the exercise of discretion or judgment it is discretionary and is not to be deemed merely ministerial."

See also our case of *State ex rel Millers Nat. Ins. Co. v. Fumbanks,* 177 Tenn. 455, 151 S.W.2d 148, 150.

Specifically applying these principles to the question here under consideration, the authors of American Jurisprudence, Vol. 34 thereof, at page 972, Section 201, make this very apt and controlling statement: "A positive official duty to provide school facilities, or school facilities of a certain kind, may be enjoined by law upon certain officials, and where no other remedy is available, performance of such duty will be enforced by mandamus." Among other authorities cited for this position is our case of *State ex rel. Harned v. Meador,* 153 Tenn. 634, 284 S.W. 890. This case is relied upon by both sides in the instant

case because of the fact that the writer of the opinion discussed what was and was not necessary in ordering mandamus. Things that were discussed as necessary before mandamus would be ordered were, of course, emphasized by the appellee, and those that were discussed when mandamus would not be ordered are emphasized and discussed by the appellants. A careful reading of this case (*Harned v. Meador,* supra) clearly shows though that the principles there enunciated were the principles controlling in the present case and unless we overrule that case it is necessary for us to affirm the Chancellor in his action herein.

In the Meador case the county court refused to take action to make provision for the county high school, as required by statute, and thus it was that mandamus was issued against the county court requiring the county court to issue the bonds. That case is different from the present case under the facts in that in the Meador case there had been three previous referendums as to whether or not the bonds should be issued to build this county high school as required by statute, and on each instance there had been a negative vote in the referendum, but the law also required the County Court of Macon County to levy or cause to be collected a tax or by other lawful means to provide funds suitable for the erection and maintenance of at least one first class high school. This Court plainly said that under this prescribed specific duty of the County Court to do so, it could be, and was in this instance, enforced by mandamus.

■ ■ In the instant case we cannot escape the fact that the statute hereinabove quoted plainly prescribes a specific duty or act on the part of the county court to be

performed in that it is said (there is no ambiguity in the statute at all) that when a referendum has been had and the vote is in the affirmative then it becomes the duty, and is the duty, of the county court "to issue said bonds in accord therewith." This does not leave any discretion or anything of the kind for the county court to do except to issue the number of bonds as voted favorably for by the people. The county court cannot say, and it is not their prerogative to say, how many bonds, more or less, or anything of the kind; there is no discretion left in them. The vote of the people has assumed this responsibility in voting favorably whether by a large or a small margin. The only thing left for the county court to do is the ministerial act of issuing the bonds as called for under this referendum. It must under this positive command of the law issue these bonds and the proceeds thereof are lodged with the Trustee of the county, and when this is done the authority of the Quarterly County Court has ended. The way the money is spent, the selection of the sites and the erection of the schools and things of that kind cannot be interferred with by the Quarterly County Court, as it has no authority over the fund. *Bandy v. State ex rel. Bd. of Education,* 186 Tenn. 11, 207 S.W. 2d 1011.

It is likewise insisted here that the Chancellor erred in hearing the matter on bill and answer as the answer sets up matters which require proof. A careful reading of the bill and the answer clearly show that the only question, in view of what has been said above, was whether or not the county court in issuing these bonds was acting in a ministerial or a legislative or discretionary capacity. There were no facts set forth in these pleadings, nor can there by any, in view of the admitted facts

that a referendum was ordered and had been voted on affirmatively. Thus in view of this fact there were no facts to be considered and the Chancellor clearly acted within and by a command of the law in issuing the mandamus herein.

Then it is likewise assigned and very forcefully argued that the majority of the members of the Quarterly County Court had it within their power and it was their duty to determine whether or not the referendum on this bond issue was legal and valid or void. The argument is made that the absentee ballotees were not informed about the referendum, that the question for the referendum was improperly worded and various and sundry arguments of that kind were made. Suffice it to say in answer to this that none of these things are questions that concern the members of the Quarterly County Court. This body does its duty and its full duty when it authorizes the referendum, and then upon an affirmative vote in the referendum issues the bonds and turns the money over to the Trustee as said above. These questions raised were questions that the purchasers of the bonds or somebody else would have to raise in another proceeding. The county court has absolutely no jurisdiction and no right to determine this matter one way or the other. It was entirely out of their hands after an affirmative vote had been had thereon except for the carrying out of the specific demand of the law to issue the bonds.

We conclude this opinion by quoting the last paragraph in *State ex rel. Harned v. Meador,* supra, because we think that this paragraph is absolutely controlling and is a previous mandate of this Court under a situation as involved in the instant case. This Court in the Meador case said (153 Tenn. 634, 284 S.W. 892):

'The writ awarded by the chancellor in no sense invades the discretion reposed in the county court, but merely commands the members of the court to take action, as the responsible agents of the county, to observe the positive requirements of the statute. Their discretion was not, and could not be, directed or controlled. Mandamus lies to produce action regulated by the discretion with which the members of the court are clothed, as a means toward the end of accomplishing the positive requirements of the law. The writ awarded by the chancellor accomplishes the purpose of setting in motion the representatives of the county, public officials clothed with exclusive power to provide for the erection of the school building, and to provide means by which the county may contribute its share toward the maintenance of the school, and the writ leaves to the court a free exercise of judgment and discretion as to the manner and means of performance.''

Thus, after carefully considering the question herein involved and the authorities, we must affirm the decree of the Chancellor.