Winfrey H. JOHNSON et al. (Morgan
County Commissioners), Appellants,

v.

STATE of Tennessee ex rel. Betty B.
DULLING et al., Appellees.

Supreme Court of Tennessee.

June 25, 1979.

John M. Norris, Cheek, Taylor & Groover,
Knoxville, Walter L. Fuller, Jr., Oak Ridge,
for appellants.

Philip P. Durand, Ambrose, Wilson &
Grimm, Knoxville, for appellees.

COOPER, Justice.

## OPINION

The Board of Commissioners (formerly
the Quarterly County Court) of Morgan
County, Tennessee, has appealed from a
writ of mandamus issued by the chancery
court ordering the Board to issue $8.4 mil-
lion dollars in school bonds. The Board
insists the issuance of bonds is discretion-
ary, and that the bond referendum held on
May 16, 1978, was merely an advisory elec-
tion to ascertain the preference of the vot-
ers and was not binding on the Board. We
disagree.

In 1978, the Tennessee Department of
Education conducted a survey of the educa-
tional system, including all school facilities,
in Morgan County. Numerous deficiencies
were noted in the survey, with the result
that the Commissioner of Education called
upon Morgan County to correct the defi-
ciencies on threat of loss of state funds for
education.

The Morgan County School Board then
presented to the Board of Commissioners
alternative studies for a renovation pro-
gram at a cost of $8.4 million or for a
consolidation of county schools at a cost of
$12.8 million. The Board of Commissioners
refused to authorize the issuance of bonds
in either amount for either program. How-
ever, at its regular meeting on April 10,
1978, the Board adopted a resolution sub-
mitting the following question to the
electorate of Morgan County to be voted on
in a referendum to be held on May 16, 1978.

3. SCHOOL REFERENDUM

The Morgan County Quarterly Court,
at its April 10, 1978, session, voted to
submit the following questions to the
qualified voters of Morgan County:
Vote for one of the following:
1. To issue $12.8 million dollars for
consolidation of Morgan County
Schools
2. To issue $8.4 million dollars to
repair or renovate Morgan County
Schools
3. To vote for no bonds for either of
the above purposes.

A majority of the voters casting ballots in
the May 16, 1978, election voted in favor of
alternative two, that is to issue $8.4 million
dollars in bonds to repair or renovate the
Morgan County Schools.

Thereafter, at its regular meeting on July 10, 1978, the Board of Commissioners refused to issue the school bonds as approved by the electorate, and, by resolution, called upon the Morgan County Board of Education to submit "a more feasible plan in line with Morgan County's ability to pay for correcting the deficiencies of Morgan County Schools. . . ."

On complaint of a teacher in the Morgan County School System and the Parent-Teachers Association, the chancery court issued a writ of mandamus directing the Board of Commissioners to issue $8.4 million dollars in school bonds.

The duties of the Board of Commissioners (formerly the Quarterly County Court), within the scheme of public education, are set forth in T.C.A. Section 49–201. Included among those duties, is the duty or rather authority

(5) To submit to the voters of the county, at any regular sessions, or at any special session called for that purpose, the proposition to issue bonds for the purpose of purchasing grounds, erecting and furnishing school buildings, and, upon the affirmative vote of the majority cast in said election, to issue bonds in accord therewith.

In *Lamb v. State,* 207 Tenn. 159, 338 S.W.2d 584 (1960), the County Court of Cocke County, by resolution, submitted to the voters of that county the question of whether or not bonds should be issued to construct a new high school and to make repairs to elementary schools of the county. The voters approved the bond issue. Thereafter, the county court declined to issue the bonds. In upholding the issuance of a writ of mandamus directed to the county court, this court pointed out that:

. . . [W]e cannot escape the fact that the statute hereinabove quoted plainly prescribes a specific duty or act on the part of the county court to be performed in that it is said (there is no ambiguity in the statute at all) that when a referendum has been had and the vote is in the affirmative then it becomes the duty, and is the duty, of the county court "to issue said bonds in accord therewith." This does not leave any discretion or anything of the kind for the county court to do except to issue the number of bonds as voted favorably for by the people. The county court cannot say, and it is not their prerogative to say, how many bonds, more or less, or anything of the kind; there is no discretion left in them. The vote of the people has assumed this responsibility in voting favorably whether by a large or small margin. The only thing left for the county court to do is the ministerial act of issuing the bonds as called for under this referendum. . .

Appellants do not take issue with the above holding, but insist the bond referendum in this case was not called under the authority of T.C.A. Section 49–201(5). Appellants insist the referendum was called under the authority set forth in T.C.A. Section 5–1024 or, in the alternative, under T.C.A. Section 49–201(8) and, consequently, the referendum was merely advisory and not binding in any way on the Board of Commissioners. The resolution adopted by the Board does not set forth the specific statute under which the bond referendum was called, but we think it evident that the Board acted under the authority set forth in T.C.A. Section 49–201(5). This statute provides for the calling of a referendum specifically for the issuance of bonds for school purposes. T.C.A. Section 5–1024 sets forth the procedure for the issuance of bonds generally. We note that in calling the bond referendum in this case, the Board of Commissioners did not follow the procedure for the issuance of general bonds. We note also that T.C.A. Section 49–201(8) does not provide for the issuance of bonds per se. It merely places upon the Board of Commissioners the duty to provide funds either by the levy of taxes or through bond issues for the purchase of school grounds, the erection and repair of school buildings, and for equipping the same; provided, same shall have been provided for by the [Board of Commissioners], or that said [Board] have approved the authorization of same by the county board of education.

Where the Board of Commissioners elects to provide the requisite funds by bond issues by the voters for the purposes set forth in Section 8 of T.C.A. 49–201, it does so under Section 5 of the statute, which provides for the calling of a referendum specifically for the issuance of bonds for school purposes. The Board of Commissioners also has the authority to issue bonds for school purposes without submitting the issue to a vote of the people. This is done by resolution adopted by a majority of the Board members at any regular, special or adjourned meeting. T.C.A. Section 49–702.

In this case, the Board of Commissioners elected to submit to the voters of Morgan County the question of whether or not bonds should be issued to provide funds to be used in repairing or renovating the Morgan County Schools. Having elected to submit the issue to the voters, the Board of Commissioners is bound by the vote of the people to issue the bonds and, on its failure to do so, is subject to the writ of mandamus. *Lamb v. State, supra.*

The Board devoted a substantial part of its brief to the argument that, in calling the referendum, it was its intention that the referendum be advisory only. There is nothing in the minutes of the Board or in the resolution calling the referendum, as adopted by the Board, to indicate the referendum was intended to be advisory only. Furthermore, we know of no authority for the legislative body of a county to poll the electorate, by referendum, solely for the purpose of having the electorate give its advice on a controversial issue, leaving the legislative body of the county free to accept or reject the advice. Such a practice would be an abdication of the responsibility of the legislative body, would be an affront to the voter, and would be a waste of public money.

Decree affirmed. Costs incident to the appeal are adjudged against the appellants.

HENRY, C. J., and FONES, BROCK, and HARBISON, JJ., concur.