IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 27, 2000 Session

## HARRY JAMES TUSANT, JR., ET AL. v. CITY OF MEMPHIS

**A Direct Appeal from the Chancery Court for Shelby County**
**No. 00-0484-2      The Honorable Floyd Peete, Jr., Chancellor**

_____

**No. W2000-01431-COA-R3-CV - Filed February 6, 2001**

_____

Petitioners, Memphis police officers, filed a petition in chancery court for writ of mandamus to require the city to promote them to certain civil service ranks after they successfully completed the promotional process and are otherwise eligible and qualified for promotion. The trial court denied the petition, and petitioners have appealed.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

David M. Sullivan, Memphis, For Appellants

Louis P. Britt III, David P. Knox, Memphis, For Appellee

**OPINION**

On March 31, 2000, petitioners, Harry James Tusant, Jr., John D. Birch, Tommy W. Bracey, Ernestine T. Davidson, Willie C. Greenwood, and George M. Olive, filed an amended petition for issuance of mandamus against the respondent, City of Memphis. The petition states that petitioner, Tusant, is employed as a major by the Memphis Police Department and petitioners, Birch, Bracey, Davidson, Greenwood, and Olive, are employed as sergeants by the Memphis Police Department. It is averred that in 1996 Tusant participated in the promotion process to the rank of inspector, and the remaining petitioners participated in the promotion process to the rank of lieutenant, both positions being civil service ranks. The petition avers that after the testing process, Tusant ranked 10th out of 28 on the eligibility list for inspector and was the next to be promoted from that list, and that the other petitioners were the next to be promoted from the lieutenant's eligibility list. Petitioners allege that the city charter, Sections 69 and 70, provide that the city council is authorized to designate the number of inspectors and lieutenants. For the fiscal years 1999 and 2000, the

authorized inspectors for employment was set at 13, and the fiscal year for 1999 began on July 1, 1998. The petition further avers that there were ample vacancies for the position of lieutenant for the fiscal years involved and that the police department administrators had stated that there was a critical shortage of lieutenants. Petitioner Tusant alleges that he was told by the former police director Winfrey that once a federal court injunction was lifted concerning the promotions that Tusant would be promoted to inspector and that in February of 2000, the injunction was dissolved. It is averred that the police department then promoted some 20 individuals to sergeant who were on the eligibility list for promotion from the 1996 promotion process. Petitioner Tusant requested the current police director to promote him, but his request was refused, and the current director filled two vacancies at the rank of inspector with individuals who were not on the eligibility list and has filled one vacancy with someone with a lower place on the eligibility list than Tusant. The petition further alleges that the respondent's refusal to promote the petitioners is discrimination against them for non-merit factors and is in violation of provisions of the Charter of the City of Memphis and the Ordinances of the City of Memphis, as quoted in their petition as follows:

City Charter
Sec. [249]. Director of personnel.

. . . . There shall be no discrimination in the City employment of personnel because of religion, race, sex, creed, political affiliation, or other non-merit factors, nor shall there be any discrimination in the promotion or demotion of City employees because of religion, race, sex, creed, political affiliation or other non-merit factors. (Ord. No. 3233, § 4, 8-31-82).

Sec. [250.1]. Examinations for applicants for employment.

All applicants for employment in positions protected by this article, shall be subjected to competitive job-related examinations under such rules and regulations as may be adopted by the Director of Personnel. The examinations to be provided for shall be of a practical nature and relate to such matters as will fairly test the relative competency of the applicant to discharge the duties of the particular position. These examinations should be developed in conjunction with other tools of personnel assessment and complemented by sound programs of job design to aid significantly in the development and maintenance of an efficient work force and in the utilization and conservation of human resources. No question in any examination shall relate to political or religious opinions or affiliations. The examination shall be conducted and controlled by the Director of Personnel.

City Ordinances

Section 9-3 Examinations for applications for employment.

(a) All applications for employment in positions protected by this article shall be subjected to competitive job-related examinations under such rule and regulations as may be adopted by the director of personnel.

(b) The examinations to be provided for shall be of a practical nature and relate to such matters as will fairly test the relative competency of the applicant to discharge the duties of the particular position. No question in any examination shall relate to political or religious opinions or affiliations. The examination shall be conducted and controlled by the director of personnel.

Sec. 9-5. No discrimination in city employment.

There shall be no discrimination in the city employment of personnel because of religious, race, sex, creed, political affiliation, or other nonmerit factors, nor shall there be any discrimination in the promotion or demotion of city employees because of religion, race sex, creed, political affiliation, or other nonmerit factors.

Sec. 9-4. Miscellaneous offenses in connection with civil service.

No person shall willfully or corruptly, by himself or in cooperation with any person:

(1) Defeat, deceive or obstruct any person in respect to his rights in relation to any examination or appointment in the classified services.

The petition further alleges that there are vacancies for the positions sought by the petitioners and that the petitioners are fit and qualified for the promotions, and that the respondent, through its police department, is willfully defeating and obstructing the petitioners' rightful promotions. The petition prays that the court issue a writ of mandamus requiring the respondent to make the promotions to which these petitioners are entitled.

The city's answer to the petition admits that petitioner Tusant was the next individual on the eligibility list to be promoted and admits that petitioners Greenwood, Bracey, Birch, Olive, and Davidson are numbered 119, 120, 121, 123, and 125 on the promotion roster for the rank of lieutenant; that the roster expired on May 29, 1998, and the last promotion made was for the individual ranked 118. The city denies that it is violating any provisions of the charter and the ordinances of the city and denies that the petitioners are entitled to require the promotions as alleged.

A hearing was held on April 25, 2000. The City of Memphis conceded that in 1996 the police department conducted a promotional process for the ranks of sergeant, lieutenant, major, and inspector, resulting in lists of individuals eligible for promotion. The petitioners introduced proof that after May of 1998, when the police department claims that these lists had expired, nearly 100 people had been promoted from these "expired lists." The proof established that in a reverse discrimination case in federal court, a preliminary injunction was issued limiting the number of promotions the city could make from the 1996 promotional list to remain in effect until the court resolved the case then pending. The then police director, Winfrey, elected to treat the two-year limitation period for the promotion lists as being tolled during the time that the injunction was in play and that this was in his discretion. Director Winfrey testified that he over-saw the promotional process and issued the eligibility lists for the respective ranks and that the policy of the police department had been to make promotions on the strict rank order from those lists. He testified that Tusant was listed 10th on the eligibility list for inspector and that the 9th person listed had been appointed to inspector. He met with Tusant concerning a possible move to information systems, an area where Tusant had previously worked, and he was prepared to promote Tusant to the inspector position in that department. He testified, however, that the city's attorneys handling the federal lawsuit advised him not to make any promotions as that might aggravate the situation in federal court. With that advice, the director informed Tusant that he would not promote him at that time but would promote him when the injunction was lifted, but the director retired before the injunction was lifted.

Kathy Todd, chief of administrative services of the police department in 1996, testified that it is within the discretion of the police director to extend the expiration date of the promotional rosters, and that such an extension was made under former Director Ivy's administration.

Harry Tusant testified that in November or December of 1998, he was called to the office of Director Winfrey and told by the director that he would be promoted to the rank of inspector once the injunction was lifted. After the federal injunction was lifted, Tusant went to the current director of police, Crews, and requested that the vacant positions be filled from the current roster. Later, after Director Crews had sought the advice of the city's attorney on the matter, he told Tusant that the city was not obligated to promote, and that the promotion process would be starting anew in the near future. Tusant testified regarding three individuals who had been promoted to "acting inspector", two of which were not eligible for a promotion to inspector, and a third who ranked below Tusant on the promotion roster. Tusant testified that he consulted police records and determined that these three individuals were receiving full inspector pay instead of "out of class pay" as they should have received per police department policy.

Richard McBryde, executive commander of police administration, testified that the three individuals referred to by Tusant who were promoted to "acting inspector" erroneously receive full inspector pay for a period of time, but that error has been corrected, and they are now receiving the correct "out of class pay."

Petitioner Tommy W. Bracey testified regarding his qualification for eligibility for promotion to lieutenant in 1996. Bracey testified that the last promotions from the 1996 roster were made in June of 1998, after which the promotional rosters supposedly expired. According to Bracey, an information bulletin dated February 2000 listed the names of sergeants that were promoted from the 1996 promotion roster. Bracey stated that he qualified for a promotion to lieutenant in 1996, but has been told by the police department that to be promoted to lieutenant he must take part in a new process that will begin soon. Bracey testified that although there are open lieutenant slots and he is qualified to be promoted to lieutenant, he has not even been promoted to acting lieutenant. Sometime after the department promoted 20 sergeants from the 1996 promotional process, Bracey was told by Deputy Chief Moses that the individuals left on the 1996 promotional roster were not going to be considered for "acting lieutenant" because the list was closed and promotions could no longer be made from that list. Moses gave no explanation as to why the sergeant's list remained valid, while the lieutenant's list had expired. Bracey testified that at all times from 1998 to present, there have been a sufficient number of lieutenant vacancies in the police department to promote him and the other petitioners in this lawsuit. Bracey is unaware of any police department policy that requires the city to fill all the vacancies in the police department.

Walter E. Crews, current director of the police department, testified that at the time of trial, he had been in his current position for five months, and with the police department for thirty-one years. Director Crews testified that he had a conversation with Tusant in which Tusant told him that Director Winfrey had discussed with him the possibility of being promoted to inspector. Director Crews informed Tusant that he knew nothing about a promotion, but would discuss it with their attorney, Mr. Britt. Mr. Britt informed Director Crews that there was no obligation to promote Tusant since there was no particular promotion date promised. Director Crews testified that the duration of a promotion roster was generally two years, and a change in that time period would be at the discretion of the director. Director Crews sought Mr. Britt's advice regarding the promotion requested by Tusant, because he wanted to give Tusant the benefit of the doubt and make sure that any decision had legal substance. Regarding promotions in the department, Director Crews stated that due to the federal injunction, he had initially not made any promotions to inspector. When the injunction was lifted, he did make promotions to sergeant, however, he made no other promotions. He testified that the department is currently using people that were doing the job of inspector as acting inspectors, but that they will have to go through the next promotional process, because the 1996 list has expired. He has plans to begin the promotional process for inspector as soon as the department has completed the process for sergeant, lieutenant, and major. In explaining his appointment of the three acting inspectors, director Crews stated that Major Schwill was placed because he had been the executive officer of the South Precinct and had run the operation on a day to day basis when Inspector Alfred Gray, commander of the South Precinct, was moved to the detective division to fill a vacancy. When Inspector Gill Leverne, commander of the training academy, was moved to the OCU unit, Major Coria Williams was moved to the position of commander of the training academy. Major Cooper was already the acting commander of the West Precinct. Crews instructions regarding the pay of these individuals was that they would receive full inspector's pay in light of the fact that they had become commanders. Subsequently, either Mr. McBryde or his legal advisor informed him that he had made a mistake in giving them full inspector

pay, and the error was corrected. Director Crews stated that the reason for having a promotional roster was so everyone can see how they finished in the total ranking, and management can have some concept of who can be promoted. The police department worked together with the Memphis Police Association for contractual purposes and derived a formula used in the promotional roster process including the consideration of seniority, test scores, and other criteria. According to Director Crew's personnel people, previously but not recently, there have been acting inspectors chosen from a non-roster list. He testified that both Schwill and Williams were familiar with the positions that they moved into as acting inspectors, and it seemed logical to have them serve in their new capacities. Appointing acting inspectors outside of the promotional roster and beginning the promotional processes are both within the director's discretion. The individuals promoted in June of 1998 will not have the requisite two years of service in order to be eligible for the next level of promotion. It is within Director Crews' discretion to move back the time period to allow them to qualify for promotions; however, Director Crews stated that he has elected to go by the contract guideline negotiated with the Memphis Police Association. With regard to the upcoming promotions, Director Crews further testified that he has the discretion to extend the time of a promotional roster, and exercised that discretion in February of 2000 by promoting 20 sergeants from the 1996 promotional roster, which by its own terms had expired. Director Crews states that he exercised his discretion in January of 2000 in not following the promotional roster for the rank of inspector, and whether he used or did not use the roster was within his discretion. He explained that there were a lot of people left on the list after these promotions, as they only promoted the next few numbers on the list: 17, 18, 19, and 20. Crews testified that due to an inability to promote for four years under the federal injunction, the department was desperate for investigators, who are at the rank of sergeant. He also admitted that there is currently a shortage of lieutenants in the police department and that there are 58 vacancies for the rank of lieutenant, however, states that there is nothing that requires the city to fill all vacancies in the police department. In explaining his decisions regarding the promotions of inspector and lieutenant, he testified that the police department is currently in the promotional process, which will alleviate the shortage of lieutenants and sergeants. The petitioners are eligible to participate in the upcoming process, and will in no way be prejudiced by their participation in this case.

In an order dated June 5, 2000, the chancellor denied the petition for a writ of mandamus stating:

> The court, having considered the entire record, the testimony of the witnesses, and applicable law, is of the opinion that the petitioners have not shown that they have a clear and specific legal right to be promoted nor have they shown there exists a duty which ought to be performed, therefore petitioners are not entitled to receive the relief of mandamus.
> IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that the Petition for Issuance of a Writ of Mandamus is denied with costs of this cause to be assessed against petitioners.

It is from this order that the petitioners appeal, presenting one issue for review as stated in their brief: "Whether the trial court erred by denying petition for the issuance of a writ of mandamus when the proven facts established petitioners had a clear and specific legal right to be promoted and defendant had a duty to promote them?"

Appellants submit that city ordinance § 28-4[1], which provides the police director with the authorization to appoint as many chief inspectors, inspectors, captains, lieutenants, sergeants, detectives, and patrolmen, along with other listed police personnel as may be needed, can not be superior to the city charter, which vests the city council with the exclusive duty to establish by ordinance the number of officers to be employed at each rank in the police department. The police department has the legal duty to enforce the ordinance by staffing the ranks as designated by the city council. Appellants argue that ordinance § 28-4 is in direct conflict with the charter.

The city defends its action in promoting persons on the sergeant's list after it expired, while not promoting appellants, stating that the promotions were in accordance with an agreement between the city and the Memphis Police Association. The city asserts that no promotions to inspector were made from the inspector eligibility roster after it expired in May of 1998. In March of 1999, former Director Winfrey appointed one major to the position of executive major or "acting inspector" on a temporary basis. In January of 2000, Director Crews appointed two majors to executive majors, or "acting inspectors." The individuals appointed to those positions were to fill an immediate need and the appointments were not permanent. "Acting inspectors" will be required, as will all majors, to compete in the upcoming promotional process, if they desire the rank of inspector. The city asserts that the director of police services has the discretionary authority to fill positions authorized by the city council, and that it is not uncommon for a number of authorized positions to remain vacant. Appellants are eligible to participate in the proposed promotion process.

The city asserts that the trial court correctly denied the petition for the writ of mandamus, because of its nature as an extraordinary remedy, which lies only in enforcing ministerial acts, and is not to control a legislative or discretionary duty. The city asserts that the promotion of individuals in the Memphis Police Department is a discretionary duty for which the director is solely responsible, and not a purely ministerial act in which the director exercises no discretion as claimed by the appellants.

The general rule regarding the issuance of a writ of mandamus is that the writ is not issued to control or coerce discretionary power by a board or officer, but will lie to enforce the performance of an official duty and to compel the exercise of power. *State v. Mayor & Alderman,* 184 Tenn. 1, 195 S.W.2d 11 (1946); *White's Creek Tpk. Co. v. Marshall,* 61 Tenn. (2 Baxt.) 104 (1872); *and*

---

[1] **Sec. 28-4 Appointment of other officers and employees of division.** The director of police services is hereby authorized and empowered to appoint one deputy director, four (4) deputy chiefs and as many chief inspectors, inspectors, captains, lieutenants, sergeants, detectives and patrolmen, together with such emergency police, secretaries, clerks, stenographers, operators, janitors, turn-keys, desk lieutenants, desk sergeants, mechanics, matrons, women police officers and such other help as may be needed to efficiently police the city and to efficiently conduct the police division of the city.

***Barnhart v. Neiser,*** 25 Tenn.(6 Hum.) 493 (1846). In determining whether an act is a "ministerial act" for which mandamus may lie, courts look to whether the law defines the duties to be performed "with such precision and certainty as to leave nothing to the exercise of judgement." ***Lamb v. State,*** 207 Tenn. 159, 338 S.W.2d 584, 586 (1960)(quoting C.J.S. Mandamus \sec 63, page 101). Where the duty involves the exercise of discretion or judgement the act is discretionary. ***Id.*** A discretionary act, which will not support the issuance of a mandamus to compel performance, is defined as one done by an official who has lawful authority to determine whether or not he will perform the act. ***Bradley v. State ex rel. Haggard,*** 222 Tenn. 535, 438 S.W.2d 738 (1969).

> For an act to be enforced by a writ of mandamus, the act must be purely "ministerial." ***Peerless Construction Co. v. Bass,*** 158 Tenn. 518, 520, 14 S.W.2d 732 (1929). If the right to have the act performed is doubtful, the right must be first established in some other form of action. Mandamus is a summary remedy, extraordinary in its nature, and to be applied only when a right has been clearly established. ***Peerless,*** 14 S.W.2d at 733. The writ of mandamus will not lie to control official judgment or discretion, but it is the proper remedy where the proven facts show a clear and specific legal right to be enforced, or a duty which ought to be and can be performed. ***State ex rel. Weaver v. Ayers***, 756 S.W.2d 217, 221 (Tenn.1988), citing ***State ex rel. Ragsdale v. Sandefur,*** 215 Tenn. 690, 696, 389 S.W.2d 266, 269 (1965).

***Hackett v. Smith County,*** 807 S.W.2d 695, 698 (Tenn.Ct.App. 1990). Furthermore, a mandamus will not lie where a right is doubtful. ***State ex rel. Weaver v. Ayers,*** 756 S.W.2d 217, 221 (Tenn. 1988).

Generally, where a public official has any discretion concerning the doing of an act, the issuance of a mandamus is not available. ***Davis v. Fentress County Bd. Of Educ.,*** 218 Tenn. 280, 402 S.W.2d 873 (1966). Where the exercise of judgment or discretion is required, he may be compelled by the issuance of a mandamus to perform the duty, however his judgment regarding the details in the performance of the duty are to be left unfettered. ***Blair v. State ex rel. Watts,*** 555 S.W.2d 709 (Tenn 1977). Where an official has the duty to do an act only after making determinations, evaluations or judgments, a wit of mandamus will not lie to do the act in any particular way. ***Seagle-Paddock Pools of Memphis, Inc. v. Benson,*** 503 S.W.2d 93 (Tenn. 1973). A court will not substitute its judgment for that of an official vested with discretion unless the official has clearly acted arbitrarily and without regard to his duty in the exercise of that discretion. *See* ***State v. Mayor & Aldermen,*** 184 Tenn. 1, 195 S.W.2d 11, 13 (1946). A court will not, by mandamus, disturb the decision and action of boards and officers vested in discretionary powers, "except where they act in an arbitrary and oppressive manner [citation omitted], or act beyond their jurisdiction [citation omitted], or where they refuse to assume a jurisdiction which the law devolves upon them [citation omitted]." ***Peerless Const. Co. v. Bass,*** 158 Tenn. 518, 14 S.W.2d 732 (Tenn. 1929).

The petitioners assert that §69[2] and §70[3] of the city charter vest exclusive authority in the city council to establish by ordinance the number of officers to be employed at each rank in the police department, as may be necessary to efficiently conduct the department. Petitioners further assert that the charter requires the city council each year to pass a budget ordinance designating the number of employees for each rank in the police department, and the mayor is responsible for carrying out the budget ordinance passed by city counsel. Petitioners argue that the administration of this duty is clearly ministerial and therefore mandamus is an appropriate remedy. In their reply brief, petitioners assert in their reply brief that ordinance §28-4 "ostensibly confers on the police director [the authority] to appoint as many employees as he wants, is in direct conflict with the Charter."

If there is a conflict between the charter and the ordinances, it has long been the law in this state that ordinances of the city are subordinate to the charter. *See Marshall & Bruce Co. v. City of Nashville*, 109 Tenn. 495, 512, 71 S.W. 815, 819 (1903); *State ex rel. Lewis v. Bowman*, 814 S.W.2d 369, 373 (Tenn. Ct. App. 1991). In *Stuermer v. City of Chattanooga*, 914 S.W.2d 917 (Tenn. Ct. App. 1995), the Court stated:

> City ordinances are subordinate to charter provisions. *Wilgus v. City of Murfreesboro,* 532 S.W.2d 50 (Tenn. Ct. App. 1975). However, where an ordinance is susceptible of two constructions, the court will adopt the construction which would render it valid. *Hermitage Laundry Co. v. City of Nashville*, 186 Tenn. 190, 209 S.W.2d 5 (1948). Those questioning the validity have the burden of proof. *Town of Surgoinsville v. Sandidge*, 866 S.W.2d 553 (Tenn. Ct. App. 1993). Where possible, a statute and ordinance on the same subject will be reconciled, and effect given to both. *SPE, Inc. v. Metropolitan Government of Nashville and Davidson County*, 817 S.W.2d 330 (Tenn. Ct. App. 1991).

*Id.* at 920.

We disagree with petitioners that there is a conflict between the charter and the ordinance. The city charter provides guidelines for the formulation and administration of a city budget which includes budgeting by the city counsel the maximum number of positions allowable for each rank in the police department. City ordinance §28-4 vests the police director with discretion to work within the budgetary restraints mandated by the city council. We construe the budgetary mandates

---

[2] § 69 of the City Charter provides: The [City Council], in addition to all other powers delegated to it, is hereby authorized and fully empowered, by ordinance, to determine the number of officers and employees in each grade, rank and classification to be employed by the City of Memphis in the police department and to fix the salaries of said officers and employees.

[3] § 70 provides: There shall be but one chief of police and one chief of detectives, but the [City Council] shall be empowered by ordinance to designate the number of captains, lieutenants, sergeants, detective sergeants, detectives, patrolmen and all other officers and employees as may be necessary to efficiently conduct the department.

and discretionary power vested in the director to be reconciled and not conflicting. The testimonies of Kathy Todd, former Director Winfrey and Director Crews support the proposition that the director has discretion in the process of filling vacant positions within the police department and is not required to fill a position merely because it is vacant. As expressed by Our Supreme Court in *Davis v. Fentress County Bd. Of Ed.,* 218 Tenn. 280, 402 S.W.2d 873, (Tenn. 1966):

> The rule is so general and obvious as to be almost axiomatic that a public officer clothed with discretionary or Quasi judicial power, as contradistinguished from mere ministerial duty, cannot be coerced by mandamus, or restrained by injunction in the exercise of his judgment under that power; otherwise, the court would substitute its judgement for his, which is not permissible. *Insurance Co. v. Craig,* 106 Tenn. 621, 639, 62 S.W.155 (1901).

*Id.* at 874. Therefore, we find that the director acted within his discretionary powers concerning the promotions in question.

Accordingly, the order of the trial court is affirmed, and the case is remanded to the trial court for such further proceedings as necessary. Costs of this appeal are assessed against the appellants, Harry James Tusant, Jr., John D. Birch, Tommy W. Bracey, Ernestine T. Davidson, Willie C. Greenwood, and George M. Olive, and their sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.