IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2019 Session

## STATE EX REL. CANDICE McQUEEN v. METROPOLITAN NASHVILLE BOARD OF PUBLIC EDUCATION ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 17-1131-II      William E. Young, Chancellor**

_____

### No. M2018-00506-COA-R3-CV

_____

A metropolitan board of education adopted a policy preventing the provision of student information to the State of Tennessee in its role as the administrator of an achievement school district pursuant to Tenn. Code Ann. § 49-13-132. The State filed a petition for writ of mandamus and declaratory judgment, and the chancery court granted the writ of mandamus. The board of education appeals. We affirm the decision of the chancery court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Lora Barkenbus Fox, Jonathan Barrett Cooper, Catherine Jane Pham, Nashville, Tennessee, for the appellant, Metropolitan Nashville Board of Public Education.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Blumstein, Solicitor General, and Michael Markham, Senior Assistant Attorney General, for the appellee, State of Tennessee.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

On October 18, 2017, the State of Tennessee, on behalf of the Commissioner of the Department of Education and Administrator of the Achievement School District ("ASD"), filed a petition for writ of mandamus and declaratory judgment against Metropolitan Nashville Board of Public Education ("MNBE") and the Director of Schools for Metropolitan Nashville Public Schools ("MNPS") seeking to require the

respondents to provide the ASD with certain student data in accordance with Public Chapter 307, codified at Tenn. Code Ann. § 49-13-132.[1] The ASD is an organizational unit of the Tennessee Department of Education ("the Department") and a "chartering authority" under statutes governing charter schools. *See* Tenn. Code Ann. §§ 49-1-614(a), 49-13-104(5)(A), 49-13-106(a)(2)(A). The MNBE is the local education agency ("LEA") responsible for operating the MNPS. *See* Tenn. Code Ann. § 49-1-102(c).

The facts that brought about the lawsuit are not in dispute. On August 2, 2017, the ASD submitted a letter to the Director of MNPS requesting, pursuant to Chapter 307, that MNPS provide to the ASD "the contact information for all students zoned to or enrolled in 2016-17 or 2017-18 in all priority schools in MNPS's district." The MNBE informed the Department on August 28, 2017, that it had voted "to withhold MNPS student and family contact information" from the ASD. The Department responded that MNPS's position was in violation of Chapter 307. The MNBE met on September 12, 2017, and adopted a policy prohibiting "the Director of Schools from releasing to other school districts the directory information, as defined by FERPA,[2] for any MNPS students and families unless they are currently enrolled in the other school districts or seeking to be enrolled in the other school districts." The Attorney General for the State of Tennessee subsequently issued an opinion consistent with the Department's position. *See* Tenn. Op. Att'y. Gen. 17-39 (Sept. 13, 2017). Nevertheless, the MNPS notified the Department by letter dated September 25, 2017, that MNPS would not be providing the requested information.

This lawsuit followed. The trial court entered an alternative writ of mandamus requiring the respondents to provide the requested information or show cause why the alternative writ should not issue. The respondents declined to provide the information and filed a motion to dismiss and answer. After a hearing on November 28, 2017, and January 10, 2018, the trial court granted the writ of mandamus. By agreement of the parties, execution of the writ was stayed pending appeal.

On appeal, we are presented with the issue of whether the trial court erred in issuing a writ of mandamus to the local school board and director of schools requiring the production of student data to the State pursuant to Tenn. Code Ann. § 49-13-132.

ANALYSIS

The respondents, the MNBE and the MNPS, make the following arguments against the trial court's decision: (1) FERPA preempts Chapter 307 and gives MNBE the

---

[1] The terms "Chapter 307" and "Tenn. Code Ann. § 49-13-132" will be used interchangeably throughout this opinion.

[2] "FERPA" stands for the Federal Educational Rights and Privacy Act.

discretion to release the information; (2) if Chapter 307 removes that discretion, the statute is ambiguous and requires the court to consider legislative history to aid in interpretation; (3) Chapter 307 requires releasing information to schools operating within the MNPS district, not to a separate school district; and (4) Chapter 307 did not envision the release of student information for marketing and recruiting.

We note at the outset that the petitioners, the Department and the ASD, sought a writ of mandamus to require the respondents to supply the requested information. It is "well-settled" in Tennessee "'that mandamus will only lie to enforce a ministerial act or duty and will not lie to control a legislative or discretionary duty.'" *State ex rel. Weaver v. Ayers*, 756 S.W.2d 217, 220-21 (Tenn. 1988) (quoting *Lamb v. State ex rel. Kisabeth*, 338 S.W.2d 584, 586 (Tenn. 1960)). The difference between ministerial duties and discretionary duties is generally:

> "[W]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial, but where the act to be done involves the exercise of discretion and judgment it is not deemed merely ministerial."

*Id.* at 221 (quoting *State ex rel. Millers Nat'l Ins. Co. v. Fumbanks*, 151 S.W.2d 148, 150-51 (Tenn. 1941)). The purpose of mandamus is to execute, not to adjudicate. *Id.* If the claim or right for which mandamus is sought is doubtful or uncertain, mandamus is not the proper remedy. *Id.* Thus, a writ of mandamus may only be issued by a court where the petitioner's right to the relief sought is "clearly established," the respondent has a "clear duty to perform the act" at issue, and "'no other plain, adequate, and complete method of obtaining the relief'" exists. *Manhattan, Inc. v. Shelby Cnty.*, No. W2006-02017-COA-R3-CV, 2008 WL 639791, at *7 (Tenn. Ct. App. Mar. 11, 2008) (quoting *Cherokee Country Club v. City of Knoxville*, 152 S.W.3d 466, 479 (Tenn. 2004)).

For the reasons discussed below, we conclude that the respondents have a clear statutory duty to comply with the petitioners' request and the trial court properly issued the writ of mandamus.

1. Federal Educational Rights and Privacy Act ("FERPA") preemption.

The respondents argue that FERPA gives them discretion to release the requested information and preempts the mandate of Chapter 307.

We begin by looking at Chapter 307 and what it requires. Chapter 307, codified at Tenn. Code Ann. § 49-13-132, provides:

> To effectuate § 49-13-113 [concerning enrollment in public charter schools], within thirty (30) days of receiving a request from a chartering

authority or a public charter school approved to operate one (1) or more schools in the district, an LEA *shall* provide at no cost a list of student names, ages, addresses, dates of attendance, and grade levels completed in accordance with § 10-7-504[3] and the Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g). Such information shall not be released by the receiving entity to outside parties without prior written consent from the parent or eligible student. Each recipient of such information shall adopt and implement a policy allowing parents or eligible students to decline to receive further information from the charter school.

(Emphasis added). Tennessee Code Annotated section 49-13-113, referenced in the beginning of § 49-13-132, provides in subsection (a) that "[p]articipation in a public charter school shall be based on parental choice or the choice of the legal guardian or custodian."

When interpreting a statute, we look at the plain meaning of the words used: "'The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" *Friedmann v. Marshall Cnty.*, 471 S.W.3d 427, 433 (Tenn. Ct. App. 2015) (quoting *Mills v. Fulmarque, Inc.* 360 S.W.3d 362, 368 (Tenn. 2012)). Chapter 307 states that, once a request is made, the LEA "*shall* provide at no cost a list of student names, ages, addresses, dates of attendance, and grade levels completed in accordance with § 10-7-504" and FERPA. Tenn. Code Ann. § 49-13-32 (emphasis added). The word "shall" is generally interpreted as "'being mandatory and not discretionary.'" *JJ & TK Corp. v. Bd. of Comm'rs of City of Fairview*, 149 S.W.3d 628, 631 (Tenn. Ct. App. 2004) (quoting *Gabel v. Lerma*, 812 S.W.2d 580, 582 (Tenn. Ct. App. 1990)). Thus, the LEA to whom a request is directed is required to provide the requesting chartering authority, which is the ASD here, with the listed information in order to effectuate the purpose of allowing participation in the public charter school "based on parental choice or the choice of the legal guardian or custodian." Tenn. Code Ann. § 49-13-113(a).

---

[3] Tennessee Code Annotated section 10-7-504 concerns confidentiality of records. Subsection (a)(4)(A) addresses the records of students in public educational institutions and states, in pertinent part:

Statistical information not identified with a particular student may be released to any person, agency, or the public; and information relating only to an individual student's name, age, address, dates of attendance, grade levels completed, class placement and academic degrees awarded may likewise be disclosed.

Tenn. Code Ann. § 10-7-504(a)(4)(A).

How does FERPA affect the application of Chapter 307? The respondents assert that FERPA preempts Chapter 307. We disagree.

We must begin "with the presumption that Congress does not intend to supplant state law and that the historic police powers of the states are not superseded by the federal act unless preemption was the clear and manifest purpose of Congress." *Morgan Keegan & Co., Inc. v. Smythe*, 401 S.W.3d 595, 605 (Tenn. 2013). Moreover, "[t]hat presumption is especially strong when Congress has 'legislated . . . in [a] field which the States have traditionally occupied.'" *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 854 (Tenn. 2010) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947)). Education is a field traditionally occupied by the states. *See, e.g.*, *E. Ramapo Cent. Sch. Dist. v. DeLorenzo*, No. 13-CV-1613 (CS), 2013 WL 5508392, at *8 (S.D.N.Y. Oct. 3, 2013). Thus, the respondents must overcome a strong presumption against preemption.

In order to establish preemption in this case, the respondents must establish an implied conflict between FERPA and Chapter 307. *See Lake v. Memphis Landsmen, LLC*, 405 S.W.3d 47, 56 (Tenn. 2013). There are two types of implied conflict preemption.[4] First, direct conflict preemption requires "'an inescapable contradiction between state and federal law,'" such that it is impossible for a person to comply with both laws. *Id.* (quoting *Leggett*, 308 S.W.3d at 853.). Second, purposes and objectives conflict preemption requires that the state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives'" of the federal law. *Id.* (quoting *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011)). As will be discussed below, there is no conflict in the present case.

FERPA and its implementing regulations provide the federal framework governing access to and disclosure of student information and records. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 278-79 (2002). The statute protects the privacy of students' educational records and information by conditioning receipt of federal funding on an educational agency or institution's compliance with the statute. *See* 20 U.S.C. § 1232g(b). The key provision of FERPA concerning the release of education records provides, in pertinent part:

> No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein *other than directory information*, as defined in paragraph (5) of subsection (a)) of students without the written consent of their parents to any individual, agency, or organization, other than to the following—[lists categories of persons not applicable here].

---

[4] We address field preemption separately below.

20 U.S.C. § 1232g(b)(1) (emphasis added). Subsection (a)(5) defines "directory information" as follows:

> [T]he term "directory information" relating to a student includes the following: the student's name, address, telephone listing, date and place of birth, major field of study, participation in officially recognized activities and sports, weight and height of members of athletic teams, dates of attendance, degrees and awards received, and the most recent previous educational agency or institution attended by the student.

20 U.S.C. § 1232g(a)(5)(A). Directory information may be disclosed without prior parental consent.[5] 20 U.S.C. 1232g(b)(1). If an educational agency or institution decides to make directory information public, however, it must "give public notice of the categories of information which it has designated as such information" regarding each student and "allow a reasonable period of time after such notice" for parents to inform the agency or institution that they do not want the information released without their prior consent. 20 U.S.C. § 1232g(a)(5)(B).

Tennessee Code Annotated section 49-13-132 requires an LEA to disclose to a requesting "chartering authority or a public charter school approved to operate one (1) or more schools in the district" only this directory information, and FERPA expressly permits the disclosure of that information when parents have been given notice and an opportunity to opt out. *See* 20 U.S.C. § 1232g(a)(5)(B); 34 C.F.R. § 99.37.[6] In the present case, the respondents have previously notified parents that MNPS and/or MNBE will disclose directory information without seeking parental consent and have given parents the opportunity to opt out in accordance with FERPA. As the respondents noted in testimony cited in their motion to dismiss, the MNBE, like other school districts,

---

[5] Pursuant to 34 C.F.R. § 99.3, "[d]irectory information means information contained in an education record of a student that would not generally be considered harmful or an invasion of privacy if disclosed."

[6] 34 C.F.R. 99.37(a) provides:

> An educational agency or institution may disclose directory information if it has given public notice to parents of students in attendance and eligible students in attendance at the agency or institution of:
> (1) The types of personally identifiable information that the agency or institution has designated as directory information;
> (2) A parent's or eligible student's right to refuse to let the agency or institution designate any or all of those types of information about the student as directory information; and
> (3) The period of time within which a parent or eligible student has to notify the agency or institution in writing that he or she does not want any or all of those types of information about the student designated as directory information.

shares directory information widely—for example, with vendors for school photographs, yearbooks, and graduation invitations.

There is no conflict between Tenn. Code Ann. § 49-13-132 and FERPA. The Tennessee statute requires an LEA to share student directory information with chartering authorities and public charter schools "in accordance with" FERPA. Tenn. Code Ann. § 49-13-132. Complying with Tenn. Code Ann. § 49-13-132 in no way "'stands as an obstacle'" to the accomplishment of FERPA's purpose of protecting student data. *Lake*, 405 S.W.3d at 56 (quoting *Williamson*, 562 U.S. at 330). The standard protective mechanism of FERPA—prior parental consent—does not apply to the directory information that is the subject of Tenn. Code Ann. § 49-13-132. *See* 20 U.S.C. § 1232g(b)(1). Disclosing the information in accordance with Tenn. Code Ann. § 49-13-132 does not conflict with FERPA; rather, it is entirely consistent with FERPA.

In the absence of a conflict between the state and federal statutes, Chapter 307 can be preempted only by field preemption—where "federal regulation of a field is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Leggett*, 308 S.W.3d at 854 (quoting *Rice*, 331 U.S. at 230). The respondents cite nothing in FERPA evidencing Congressional intent to legislate the entire field of student information. FERPA works by conditioning the receipt of federal funding on compliance with "requirements relating to the access and disclosure of student educational records." *Gonazaga*, 536 U.S. at 278. The federal statute "does not by itself forbid any state to disclose anything." *Chi. Tribune Co. v. Bd. of Trs. of Univ. of Ill.*, 680 F.3d 1001, 1004 (7th Cir. 2012). We find no support for a field preemption theory.

Thus, contrary to the respondents' argument, Chapter 307 is not preempted by FERPA. The state statute is mandatory and requires an LEA to provide the requested directory information to a requesting chartering authority or public charter school.

2. Ambiguity in statute.

The respondents' next argument is that Chapter 307 is ambiguous and requires interpretation using the legislative history. Specifically, the respondents assert that the statute is unclear with respect to two issues: whether it allows a separate school district to obtain the student data and whether the student data may be used for marketing and recruiting purposes. For the reasons detailed in the discussion below, we determine that there is no ambiguity in Chapter 307 and, therefore, we need not consult the legislative history.

A. Separate school district argument.

The respondents assert that Chapter 307 allows the release of directory information to schools operating within the school district (in this case, MNPS), not to a

separate school district like the ASD. They urge the court to consult the legislative history to confirm the correctness of this interpretation. We look first to the language of the statute, which states, in pertinent part:

> To effectuate § 49-13-113, within thirty (30) days of receiving a request from *a chartering authority or a public charter school approved to operate one (1) or more schools in the district*, an LEA shall provide at no cost a list of student names, ages . . . .

Tenn. Code Ann. § 49-13-132 (emphasis added). Chapter 307 requires an LEA to release directory information to "a chartering authority *or* a public charter school approved to operate one (1) or more schools in the district." The respondents' argument ignores the "chartering authority" part of the statute, which is the language that authorizes the ASD to receive the directory information. The ASD is a chartering authority. Tenn. Code Ann. § 49-13-104(5).

We apply the interpretive rule known as the "rule of the last antecedent" to help us construe Chapter 307. This rule provides that "'a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows.'" *In re Estate of Tanner*, 295 S.W.3d 610, 624 (Tenn. 2009) (quoting *United States v. Hayes*, 555 U.S. 415, 425 (2009)); *see also United States v. Martin,* 438 F.3d 621, 631 (6th Cir. 2006); 2A Norman J. Singer & Shambie Singer, SUTHERLAND STATUTORY CONSTRUCTION § 47.33 (7th ed. 2018 update). While this rule can be overcome by "other indicia of meaning," *In re Estate of Tanner,* 295 S.W.3d at 624, it is applicable "where no contrary intention appears." SUTHERLAND § 47.33. Moreover, "[a] qualifying phrase separated from antecedents by a comma is evidence that the qualifier is supposed to apply to all the antecedents instead of only to the immediately preceding one." *Id.*

The last antecedent rule is not a hard and fast rule of statutory interpretation. As our Supreme Court has observed, "canons of construction, though helpful, should always be tested against the other interpretive tools at a court's disposal." *In re Estate of Tanner,* 295 S.W.3d at 624 n.13. Our first and best interpretive tool is the natural and ordinary meaning of the words used by the legislature. *Mills*, 360 S.W.3d at 368. We find no "other indicia of meaning" applicable to our interpretation of Tenn. Code Ann. § 49-13-132.[7] *Estate of Tanner*, 295 S.W.3d at 624.

Applying the last antecedent rule to the phrase at issue in this case—*approved to operate one (1) or more schools in the district*—we conclude that the legislature intended

---

[7] The petitioners point out that, under the respondents' interpretation, only the MNBE could be a "chartering authority" authorized to request directory information under Chapter 307 because it is the only "chartering authority" that could be approved to operate a school in the MNBE's district. But that interpretation would mean that the legislature intended to require an LEA to share information with itself, a patently absurd result.

for the phrase to modify only "a public charter school" because there is no comma before the phrase. In accordance with the plain meaning of the statutory language, we construe Chapter 307 to provide for two types of entities that can request directory information: (1) a chartering authority, or (2) "a public charter school approved to operate one (1) or more schools in the district." Tenn. Code Ann. § 49-13-132. An ASD does not need to operate a school within the district to be entitled to the information. We find no ambiguity here.

B. Marketing and recruiting argument.

The respondents' final argument is that the trial court was mistaken in its interpretation of the phrase "[t]o effectuate § 49-13-113." Tenn. Code Ann. § 49-13-132. They assert that § 49-13-113 "outlines the process available *once parents are trying to enroll* in the charter school, and Tenn. Code Ann. § 49-13-132 helps effectuate this voluntary enrollment process." The respondents refer, in particular, to the lottery process for charter schools applicable in the event that a charter school has a larger number of interested students than the school's capacity.[8] Based upon the content of § 49-13-113 (and the legislative history), the respondents aver that "[t]he true intent of Tenn. Code Ann. § 49-13-132 is to allow the sharing of information in situations where a student is trying to attend a charter school."

The respondents' argument falls apart upon examination. If a student has expressed interest in attending a charter school and the charter school has reached the point of needing to employ the lottery process, the charter school would already have the student's basic information. As the petitioners state in their brief: "Respondents have not explained convincingly why chartering authorities or public charter schools would need an LEA to provide the student information specified in Chapter 307 'to effectuate' the lottery process . . . since such a process presupposes their already knowing such basic student information." Rather, the purpose of the statute is to enable chartering authorities and public charter schools to gain access to student data to inform eligible students and their parents/guardians of the available school choices.

Further indication of this intent is Chapter 307's requirement that the recipient of the information establish a policy allowing parents/guardians "to decline to receive *further* information from the charter school." Tenn. Code Ann. § 49-13-132 (emphasis added). The use of the word "further" contemplates that the charter school will initially use the list of student names and directory information to contact families with information about the school.

---

[8] Tennessee Code Annotated section 49-13-113(b)(3) provides, in part: "If the number of applications exceeds the capacity of a program, class, grade level, or building, the charter school shall select students through a lottery."

Contrary to the respondents' argument that the directory information was not intended to be used for marketing and recruiting, the language of Tenn. Code Ann. § 49-13-132 contains no restrictions on the receiving entity's use of the information. Once a chartering authority or charter school receives directory information from an LEA, the statute does not constrain that entity in the purpose for which it may use the information. The statute does, however, restrict to whom the information may be released: "Such information shall not be released by the receiving entity to outside parties without prior written consent from the parent or eligible student." Tenn. Code Ann. § 49-13-132.

We reject the respondents' argument regarding the petitioners' ability to use the requested information for marketing and recruiting. The statute is not ambiguous on this point and, therefore, there is no need to consult the legislative history.

In sum, Tenn. Code Ann. § 49-13-132 describes a ministerial duty, not a discretionary action, for an LEA receiving a request from a chartering authority or a public charter school approved to operate a school(s) in the district. We affirm the trial court's decision to issue the writ of mandamus.

CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellants, Metropolitan Nashville Board of Public Education, and Dr. Shawn Joseph, Director of Schools, Metropolitan Nashville Public Schools, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE