STATE *ex rel.* MILLERS NAT. INS. CO. *et al. v.* FUMBANKS *et al.*

(*Jackson,* April Term, 1941.)

Opinion filed May 24, 1941.

Holmes & Holmes, of Trenton, for complainants.

John A. Greer, Jones Greer, and Franklin W. Latta, all of Dyersburg, for defendants.

Mr. Special Justice Alan M. Prewitt delivered the opinion of the Court.

The parties will be referred to as they were in the court below.

The bill filed in this cause seeks to compel the quarterly county court of Dyer County, Tennessee, in accordance with the provisions of the Acts of the General Assembly, Private Acts, Chapter 788, Session of 1935, and

conformable to a written agreement and a resolution of the said court, to levy a tax sufficient to take care of the interest and to create a sinking fund to retire the principal amount of such bonds on maturity. The bill was filed on September 20, 1938, in the chancery court of Dyer County, setting out that the relators were the holders of certain interest bearing, coupon bonds, issued by Dyer County, said bill setting forth that the relators had appointed a committee to represent and act for such relators in negotiating with the County of Dyer looking to the making of an agreement with respect to the funding or refunding of the obligations of said county. That in accordance with the above mentioned act, the said quarterly county court appointed a committee to act for it in the making of an agreement with the creditors of the county with respect to the payment of said bonds.

The bill further recites that on the first day of July, 1935, and prior thereto, the county had issued bonds and warrants which were then outstanding and unpaid in the aggregate total amount of principal of approximately $4,715,788, and further that during the Session of 1935, the General Assembly of the State of Tennessee enacted Private Acts, chapter 788, and, caption omitted, provided among other things as follows:

"Section 1—That the County of Dyer, through its Quarterly County Court, by resolution, is empowered to provide for funding, or refunding any or all of its obligations, and to issue its bonds in substitution for such outstanding indebtedness:

"Section 2—That funding, or refunding bonds may be issued as a whole, or in series, at one time, or from time to time, the time of payment not to exceed fifty years from date thereof; that the bonds shall recite that they are issued under authority of this Act; that the full

faith, credit, and resources of the County of Dyer shall be pledged for payment of the bonds so issued;

"That the Court may provide for redemption of all or any part of said bonds, at par and interest, at any time prior to maturity, or out of any Sinking Fund monies on hand, may purchase said bonds at the lowest price obtainable, provided said bonds can be acquired at less than par value; and that any bonds so redeemed shall be immediately cancelled.

"Section 3—That, annually, while any of said bonds are outstanding, it shall be and is hereby made the duty of the Quarterly County Court of Dyer County, Tennessee, to levy and collect a special tax upon all taxable property in Dyer County, of such rate as will provide a sum of money sufficient to pay interest on any and all bonds issued pursuant to the provisions of this Act and to create a Sinking Fund for the redemption of said bonds, such tax rate to be governed by the amount of bonds issued, their interest, requirements, and stipulations pertaining to Sinking Fund provisions set out in resolutions authorizing said bonds; and it shall be the duty of the Quarterly County Court in computing the tax rate necessary for said purpose in each year to make due and proper allowance for tax rate delinquencies for the three years last past, that the proceeds of such tax levies shall be kept separate from any other funds, and used only for the payment of principal and interest of bonds issued under this Act.

"Section 4—That the bonds may be exchanged for outstanding obligations, or may be sold, and that the Court may delegate full and complete authority to a committee selected by the Court.

"Section 5—Provides that the Court may provide for separate and specific issues of refunding bonds to be

designated 'Highway Reimbursement Refunding Bonds'; that all funds allocated to the County by the State Highway Reimbursement Board shall be specifically pledged and held in trust for the payment of principal and interest of such designated bonds; that in addition thereto such bonds shall be direct obligations of the County and provision for payment of principal and interest shall be included in the annual tax levies.

"Section 6—Provides: 'It being the intention and purpose of this Act to vest in said Court full and complete authority to make provision for the fulfillment of and compliance with on the part of the County of any agreement, or agreements, which may be entered into by and between Dyer County and its creditors with respect to a composition of the outstanding indebtedness of said County.'"

That following said Act, on the 16th day of December, 1935, the said county court adopted a resolution providing for the issuance of bonds, which new bonds were to be exchanged for the old bonds as provided in said Act and resolution. The old bonds carried interest at the rate of six per cent, but the new bonds provided for a much lower rate of interest and the maturity dates were extended.

The bill further sets forth that said resolution of the county court provided that for the year 1938 there was to be levied a tax on all of the taxable property in said county collectible in the year 1939 so as to produce a maximum amount for bond purposes of $156,250, and that there was added for delinquencies the sum of $39,062, making a total of $195,312. Said bill also sets out the years and amounts to be raised and the amount to be levied for the years prior and subsequent to the year 1938; the bill further sets out that the tax rate for bond

purposes for 1935 was $1.20 and that there was a deficiency for the year 1936 of $11,176, and further that for the year 1937 there was a tax levy of $1.29 and that there was for this year a deficiency of $7,935; that for the year 1938 the tax levy was $1.39, but showed a deficiency of said year of $12,216; for the year 1939 that the tax levy was $1.39 and a deficiency of $27,212. The bill further states that by simple calculation it appears that the tax levy for the year 1938 should have been $1.63.

The bill further sets out that the county was continuing to fall in arrears and that while the county had not defaulted in the payment of any interest under the new financial arrangement, the county court was not collecting a sufficient amount of taxes which would create from year to year a sinking fund which would in an orderly manner take care of all of said bonds on maturity.

The county court answered the bill and in the main the statements of the bill are not denied, but sets out that the county had come through an extended period of depression; that several thousand dollars more in delinquent taxes had resulted following a high tax rate some years before, but that the county had never defaulted on its interest, and that the delinquent taxes when collected would result in a sinking fund sufficient to take care of the principal amount of said bonds on maturity, and that to raise the tax rate on bonds to $1.63 on a hundred dollars for bond purposes would result in added delinquencies, and, in fact, the relators would suffer by reason of such additional delinquencies, that defendants hoped and believed that many of these delinquent taxes could be collected and, as collected, would go into supplementing the sinking fund already created.

So then, the question for determination here is whether the peremptory writ of *mandamus* should have been

issued compelling the quarterly county court of said county to increase the tax levy from $1.39 for said bond service to $1.63 so as to provide an ample sinking fund for the retirement of the principal of said bonds.

It might be stated that the State took over approximately one million dollars of said bonds thereby reducing the bonded indebtedness of the county to less than four million dollars.

The use of *mandamus* is limited to the enforcement of rights and duties imposed by law. 38 C. J., sec. 61, p. 588.

It is contended by the relators that under the provisions of the said Act of 1935 above set out no discretion was left to the county court, but that the agreement had been entered into by the committee representing the relators and also a committee representing the county court and that the resolution set out just what was to be done and that the bill in this case simply seeks to require the said county court to carry out a ministerial act.

It is also insisted that in this case the county had no discretion to exercise in the tax levy. That the contract was made by authority of an Act of the Legislature which imposes a legal obligation of performance.

On the other hand, it is insisted by the defendants that while it is the duty of the county under said act to provide a sufficient levy to take care of the interest on said bonds and to create a sinking fund for the retirement at maturity, said act does not fix the amount of the levy and therefore leaves this matter to the sound discretion of the county court; that whether said levy should continue to be $1.39 on the hundred dollars or whether it should be $1.63 on the hundred dollars is a matter for the determination of the quarterly county court, acting in good faith, and bearing in mind the assessments of

said county from year to year, and, more important still, the number of delinquencies that appear from time to time. The defendants further contend that the county is in much better condition financially and that its officials have well grounded belief that the delinquent tax rolls will gradually become less instead of more, and further should the tax rate be raised to approximately $3 on the hundred dollars for all purposes that the delinquent taxes would amount to more instead of less. The county contends further that the relators are not entitled to have the writ of *mandamus* now, because the reasons, if any existed, no longer exist, as this period has long since passed and that there has been no default and that there is no necessity now for such a course.

■ "While there is some conflict of opinion as to what constitutes, strictly speaking, a ministerial duty and distinguished from a discretionary duty, and while it is not always easy to determine where the line of distinction lies between a ministerial act and an act involving the exercise of judgment, the distinction by the merely ministerial and judicial and other official acts is generally said to be that, where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial, but where the act to be done involves the exercise of discretion and judgment it is not to be deemed merely ministerial." 38 C. J., sec. 72, p. 598.

■ The principal question is whether or not the contract and the county court resolution are enforceable by *mandamus*, so as to require the county court to levy the tax rate prayed, and whether the effort to compel the county court to levy the $1.63 bond service tax would be a ministerial act or whether it would involve discretion. It is insisted by the relators that under the provisions

of said act and said resolution it is necessary and the law requires a rate of $1.63. An examination of the act clearly shows that it is mandatory on the county court to levy a tax rate, but under its discretion the county court fixes the amount and not the statute. We think it obvious under the terms of the act and the resolution that had the county court refused to make a levy, then *mandamus* would lie to compel it to do so, but we are of the opinion that *mandamus* does not lie to fix a rate that should be adopted. The first is a statutory requirement; the latter is a contractual amount.

*Mandamus* may issue when the county court altogether refuses to make a levy for high school purposes. See *State of Tennessee, ex rel.* v. *Meador,* 153 Tenn., 634, 284 S. W., 890.

This rule has no application to such a situation as we have here presented, where the county court has made a levy for taxes in such an amount as in the discretion of that court will provide sufficient funds. Analyzed, the insistence here is that the chancery court which reviews the action of the county court in determining the amount necessary to maintain a high school in Pickett County, in effect, the salaries to be paid teachers, in matters as to which discretion is vested in the county court and concerning which the members of that court are purely in position to exercise judgment. *Smith* v. *Groce,* 158 Tenn., 255, 12 S. W. (2d), 715.

In *Smith et al.* v. *Groce et al., supra,* it appeared that a budget was made by the Board of Education which would have called for a larger levy than was made; the court considered the recommendation of the Board of Education and adopted a smaller budget and levied accordingly. In that case it was insisted that the county court was required to make a levy for high school pur-

poses and to exercise its discretion as to the amount in a reasonable way; that the budget made by the Board of Education carried the lowest figures consistent with the proper conduct of the high school and the revised budget adopted by the court, to meet which the levy was made, was so inadequate as to be a pretense only and that this constituted a refusal of the court to perform duties imposed by the Act of 1925.

The court further said in the *Groce Case* that while *mandamus* may issue when the county court altogether refuses to make a levy for high school purposes, this rule has no application to such a situation as there presented, where the county court has made a levy for taxes in such amount as in the discretion of that court will provide sufficient funds.

In *State ex rel.* v. *Meador,* 153 Tenn., 634, 284 S. W., 890, it appeared that the chancellor awarded a peremptory *mandamus* of Macon County to make provision for a county high school, as required by Chapter 115, Acts of 1925, which requires that provision be made by the counties of the State for at least one four-year high school in every county and subsection 9 of Section 9 imposes on the county court the duty of providing funds for the erecting of a suitable building and maintaining a first class four-year high school according to the provisions of the act.

In that case Mr. Justice Cook says:

"The public school system is a matter of State, and not local, concern, and the establishment, maintenance, and control of the public schools is a legislative function. To promote the public schools, the State, through the Legislature, may levy taxes directly [to finance said schools of the State], or the State, having as it does, full control over its agencies, the counties, may authorize

them to levy a tax, or may by statute require them to levy a tax for the establishment and maintenance of the public schools.''

See also *Demoville* v. *Davidson County,* 87 Tenn., 214, 10 S. W., 353; *Quinn* v. *Hester,* 135 Tenn., 373, 86 S. W., 459; *Hill* v. *Roberts,* 142 Tenn., 215, 217 S. W. 826.

It is further said in the *Meador Case* that:

''Where the law plainly prescribes a specific duty or a specific act to be performed, which is due in point of it, but has been refused, if simply effecting a private right, or only omitted if of public concern, the court may interfere at the instance of the proper parties, and by *mandamus* set those public officials charged with the duty in motion, leaving to them, however, the free exercise of their own judgment and discretion in the manner of performance. High, Extraordinary Legal Remedies, secs. 34, 36, 41; *Insurance Co.* v. *Craig,* 106 Tenn., [621], 640, 62 S. W., 155.''

The Court further said in the *Meador Case*:

''The writ awarded by the chancellor in no sense invades the discretion reposed in the county court, but merely commands the members of the court to take action, as the responsible agents of the county, to observe the positive requirements of the statute. Their discretion was not, and could not be, directed or controlled. *Mandamus* lies to produce action regulated by the discretion with which the members of the court are clothed, as a means toward the end of accomplishing the positive requirements of the law. The writ awarded by the chancellor accomplishes the purpose of setting in motion the representatives of the county, public officials clothed with exclusive power to provide for the erection of the school building, and to provide means by which the county may contribute its share toward the maintenance

of the school, and the writ leaves to the court a free exercise of judgment and discretion as to the manner and means of performance.''

We are of the opinion that under the provisions of the act and the resolution of the county court of Dyer County, it was mandatory upon the county to levy a bond service tax and that this duty is a continuous one resting on that body so long as the bonds in question remain outstanding and unpaid. This means that the rate for such service shall be reasonable and in keeping with the valuation of the property of the county and the number of delinquencies from year to year, and a close observation in the matter of increased valuations or the reverse as the case may be so that the rate so fixed shall not be a mere pretense, but shall be a compliance with the act of the Legislature and of the resolution. The matter of the amount of the delinquencies will no doubt come up from time to time and the amount of such delinquencies will vary from year to year and perhaps with improved conditions such delinquencies will be reduced to a minimum and in such case a higher or increased rate will not be necessary. This leaves to the county court the manner and means of performance.

It therefore results that we find no error in the decree of the chancellor, and it is affirmed.