**TENNESSEE SMALL SCHOOL SYSTEMS, et al.**

v.

**Ned Ray McWHERTER, et al.**

Supreme Court of Tennessee,
at Nashville.

Oct. 8, 2002.

Lewis R. Donelson, Christopher G. Boling, Jonathan J. Cole, Angie C. Davis and Marianne Bell Matthews, Memphis, Tennessee, for the plaintiffs-appellants, Tennessee Small School Systems, et al.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Kate Eyler, Deputy Attorney General; and Kimberly J. Dean, Deputy Attorney General, Nashville, Tennessee, for the defendants-appellees, Ned Ray McWherter, et al.

Karl F. Dean and James L. Charles, Nashville, Tennessee, for the intervenors-appellees, Metropolitan Nashville–Davidson County Public School System.

Mary Neil Southerland, Chattanooga, Tennessee, for the intervenors-appellees, Chattanooga–Hamilton County Public School System.

Jack Mitchell, Clarksville, Tennessee, for the intervenors-appellees, Clarksville–Montgomery County Public School System.

Jerry D. Kizer, Jackson, Tennessee, for the intervenors-appellees, Jackson–Madison County Public School System.

Michael Moyers, Knoxville, Tennessee, for the intervenors-appellees, Knox County Public School System.

Ernest G. Kelly, Memphis, Tennessee, for the intervenors-appellees, Memphis City Public School System.

Thomas A. Varlan, Knoxville, Tennessee, for the intervenors-appellees, Sevier County Public School System.

Thomas R. Russell, Memphis, Tennessee, for the intervenors-appellees, Shelby County Public School System.

E. Patrick Hull, Kingsport, Tennessee, for the intervenors-appellees, Sullivan County Public School System.

## OPINION

E. RILEY ANDERSON J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

This is the third appeal to this Court of the plaintiffs' suit challenging the constitutionality of the manner in which the State funds public education. In the first appeal, we held that the State was required by the Tennessee Constitution to maintain and support a system of public schools that affords substantially equal educational opportunities to all students, and we found that the State's school funding scheme unconstitutionally denied equal educational opportunities to all students. *Tennessee Small School Sys. v. McWherter*, 851 S.W.2d 139 (Tenn.1993) (*"Small Schools I "*). In the second appeal, we conditionally upheld a new funding plan allocating funds to school systems according to a formula based on the cost of forty-three components necessary for a basic education, known as the Basic Education Pro-

gram ("BEP"), Tenn.Code Ann. §§ 49-3-351 to -360. *Tennessee Small School Sys. v. McWherter*, 894 S.W.2d 734 (Tenn.1995) (*"Small Schools II "*). We found, however, that the omission of a requirement for equalizing teachers' salaries was a significant defect in the Basic Education Program ("BEP"), which put the entire plan at risk both functionally and legally, and we concluded that "the plan must include equalization of teachers' salaries according to the BEP formula" in order for the plan to be constitutional. *Id.* at 738.

In this third appeal, the question is whether the State's current method of funding salaries for teachers—the salary equity plan found in Tennessee Code Annotated § 49-3-366—equalizes teachers' salaries "according to the BEP formula" or whether it fails to do so and violates equal protection by denying students substantially equal educational opportunities. The trial court dismissed the case after finding that the State had met its constitutional obligation to equalize teachers' salaries under *Small Schools II*. The plaintiffs then filed a motion asking this Court to assume jurisdiction of the appeal, *see* Tenn.Code Ann. § 16-3-201 (Supp.2001),[1] asserting that the State failed to comply with this Court's directive in *Small Schools II* to equalize teachers' salaries according to the BEP formula for funding public education. We granted the motion.

After careful consideration of the record and applicable authorities, we find that the salary equity plan embodied in Tennessee Code Annotated § 49-3-366 does not equalize teachers' salaries according to the

---

1. The "reach-down" statute, Tenn.Code Ann. § 16-3-201(d)(1), provides that the "supreme court may, upon the motion of any party, assume jurisdiction over an undecided case in which a notice of appeal ... is filed before any intermediate state appellate court...." The statute applies "only to cases of unusual public importance in which there is a special need for expedited decision and which involve: (A) State taxes; (B) The right to hold or retain public office; or (C) Issues of constitutional law." Tenn.Code Ann. § 16-3-201(d)(2)(Supp.2001).

BEP formula and contains no mechanism for cost determination or annual cost review of teachers' salaries, unlike the BEP conditionally approved in *Small Schools II.* We further find that no rational basis exists for structuring a basic education program consisting entirely of cost-driven components while omitting the cost of hiring teachers, the most important component of any education plan and a major part of every education budget. Therefore, the lack of teacher salary equalization in accordance with the BEP formula continues to be a significant constitutional defect in the current funding scheme. Accordingly, we hold that the salary equity plan fails to comply with the State's constitutional obligation to formulate and maintain a system of public education that affords a substantially equal educational opportunity to all students. The trial court's judgment dismissing the case is reversed and the case is remanded.

## BACKGROUND

In 1988, a group of rural school districts,[2] superintendents, board of education members, students, and parents filed suit claiming that Tennessee's education funding system violated article XI, section 12 of the Tennessee Constitution[3] because the funding system denied public school students the right to an equal education due to a disparity in resources between rural and urban counties. To place the issues in the present dispute in the appropriate context, we begin by reviewing the extensive procedural history.

### *Small Schools I*—Tennessee Foundation Program

In their initial lawsuit in 1988, the plaintiffs sought a declaratory judgment that the State's educational funding statutes were unconstitutional, that the defendants be enjoined from acting pursuant to those statutes, and that the State be required to formulate and establish a funding system that met constitutional standards. The State, along with several school systems located in urban and suburban counties across the state who were allowed to intervene, opposed the plaintiffs' suit on the ground that the funding scheme enacted by the legislature was not reviewable by the courts.[4] In sum, the defendants argued that article XI, section 12, of the state constitution provided no qualitative standards for measuring the quality of education or the sufficiency of funding and that such matters were left to the exclusive province of the legislative and executive branches. *Small Schools I,* 851 S.W.2d at 141. After a six-week trial, the trial court agreed with the plaintiffs and declared the State's funding system unconstitutional.

On appeal, this Court agreed with the trial court's findings that there were impermissible disparities in the educational opportunities available to public school students, as evidenced by significant differences in teacher qualifications, student

---

**2.** The following county school systems are identified in the notice of appeal as plaintiffs-appellants: Crockett, Grundy, Hancock, Hickman, Overton, Pickett, Trousdale, and Wayne.

**3.** "The State of Tennessee recognizes the inherent value of education and encourages its support. The General Assembly shall provide for the maintenance, support and eligibility standards of a system of free public schools." Tenn. Const. art. XI, § 12.

**4.** The suit was filed against various State officials, including the Governor and other executive branch officials, leaders of the General Assembly, and members of the State Board of Education. The intervenors consisted of nine school districts: Davidson County, Chattanooga–Hamilton County, Knox County, Jackson–Madison County, Memphis City, Clarksville–Montgomery County, Sevier County, Shelby County, and Sullivan County.

performance, and basic educational programs and facilities. We noted, for example, that many schools in the rural districts had decaying physical plants, inadequate heating, showers that did not work, buckling floors, leaking roofs, inadequate science laboratories, and outdated textbooks and libraries. *Small Schools I*, 851 S.W.2d at 145. Furthermore, the evidence showed that some of the school districts were unable to offer advanced placement courses, more than one foreign language, or the state—mandated art and music classes, drama instruction, and athletic programs. *Id.* at 145–46.

We also agreed with the trial court that the gross disparities in educational opportunities available to public school students were caused by the State's then-existing funding scheme, the Tennessee Foundation Program ("TFP"), which included only a "token amount" of state funds for the equalization of school systems and, significantly, was unrelated to the costs of providing programs and services by the local schools. *Small Schools II*, 894 S.W.2d at 736. Indeed, state funding under the TFP was based primarily on average daily attendance of students, while local funding depended heavily on local sales tax collections and discretionary funding by local governments. *Small Schools I*, 851 S.W.2d at 143. We therefore concluded that the state funding scheme violated equal protection principles:

> The constitutional mandate that the General Assembly shall provide for a system of free public schools guarantees to all children of school age in the state the opportunity to obtain an education. The provisions of the constitution guaranteeing equal protection of the law to all citizens, require that the educational opportunities provided by the system of free public schools be substantially equal. The constitution, therefore, imposes upon the General Assembly the

obligation to maintain and support a system of free public schools that affords substantially equal educational opportunities to all students.

*Id.* at 140–41.

Although we held that the TFP was unconstitutional, we elected not to fashion a specific remedy for the deficiencies of the plan, but rather, gave the legislature the opportunity to establish a public school system that affords substantially equal educational opportunities to all students. *Small Schools I*, 851 S.W.2d at 140–41. In doing so, we recognized that the means whereby the State could achieve its constitutional obligation is a legislative prerogative and that the legislature's power in this regard is extensive. *Id.* at 141, 156. We observed that an acceptable funding plan could include the imposition of funding and management responsibilities on local governments, but that the Constitution would not permit "the indifference or inability of those [local governments] to defeat the constitutional mandate of substantial equality of opportunity." *Id.* at 141.

### *Small Schools II*—The Basic Education Plan

In *Small Schools II*, the plaintiffs contended that the State's new plan, which omitted teachers' salaries as a component of the Basic Education Plan ("BEP") and failed to equalize salaries, amounted to an unconstitutional denial of a substantially equal education opportunity to all students.

The BEP, which was enacted by the legislature while *Small Schools I* was pending in this Court, provided for the allocation of funds to local school systems "on a fair and equitable basis by recognizing the differences in the ability of local jurisdictions to raise local revenues." Tenn.Code Ann. § 49–3–356. The BEP

required both state and local funding, but with the proportionate local share determined by each county's relative ability to pay, or its "fiscal capacity." [5] *Small Schools II*, 894 S.W.2d at 737. Each local government was required to appropriate the funds determined to be its share under the plan, *see* Tenn.Code Ann. § 49–3–356, but the amount of separate state funding no longer depended upon the amount of revenue collected or appropriated by the local government. *Small Schools II*, 894 S.W.2d at 737.

The BEP formula was based on the cost of forty-three components that the legislature deemed necessary "for [Tennessee] schools to succeed," Tenn.Code Ann. § 49–3–302(3) (Supp.2001). The components included items such as the cost of vocational education, guidance counseling, textbooks, physical education, computer technology, transportation, library services, special education, art, music, classroom supplies, alternative schools, travel, and capital expenditures for facilities. The components also included the costs of hiring secretaries, nurses, librarians, social workers, principals and their assistants, assessment personnel, coordinators, supervisors, custodians, psychologists, and superintendents but, significantly, omitted the cost of hiring teachers, the most important component of any education plan and a major part of every education budget. *Small Schools II*, 894 S.W.2d at 736, 738. In addition, the BEP formula included provisions for an annual review of the actual cost of each component and for reviewing the formula each year to make any adjustments for improving the system. *Id.* at 736.

In *Small Schools II*, the plaintiffs challenged the BEP formula based on the fact that costs associated with increasing or equalizing teachers' salaries was not one of the components "deemed necessary for schools to succeed," resulting in a disparity in teachers' salaries across the state. The BEP in its original form as proposed by the State Board of Education included teachers' salaries as one of the components of the formula necessary for schools to succeed, but the plan as enacted into law by the legislature did not.[6] The defendants nonetheless argued that teachers' salaries did not affect the quality of instruction or educational opportunity and that, therefore, the BEP formula did not need to provide for the equalization of teachers' salaries as one of its components.

On appeal, this Court emphasized that "[t]eachers, obviously, are the most important component of any education plan" and that their compensation—the major item in every education budget—is a significant factor in determining where teachers choose to work. *Id.* at 738. Moreover, we concluded that the rationale supporting the inclusion of the other components of the BEP applied with equal, if not greater, force to the inclusion of teachers' salaries. *Id.* Accordingly, we held that the "omission

---

**5.** A county's fiscal capacity is calculated using a formula developed by the Tennessee Advisory Commission on Intergovernmental Relations. Each county's fiscal capacity is expressed as a percentage of the total capacity of all counties in the State and is based on its sales tax base, property tax base, and income. *Small Schools II*, 894 S.W.2d at 737.

**6.** In *Small Schools I*, we discussed the plan developed by the State Board of Education at the direction of the General Assembly, which included factors to consider "differences in competitive salaries earned in different counties." Indeed, we noted that the defendant asked the Court to take judicial notice of the plan, which had not yet been enacted, in support of its position that the education system was adequate. 851 S.W.2d at 146–47. As noted, however, the plan as eventually enacted by the legislature did not include teachers' salaries. The result has been years of litigation and untold expense for all concerned.

of a requirement for equalizing teachers' salaries is a significant defect in the BEP" and that the "failure to provide for the equalization of teachers' salaries according to the BEP formula, puts the entire plan at risk functionally and, therefore, legally." *Id.* We emphasized that the "plan must include equalization of teachers' salaries according to the BEP formula" in order for the plan to be constitutional. *Id.*

### Small Schools III—Salary Equity Plan

In 1995, following *Small Schools II*, the legislature enacted the salary equity plan in Tennessee Code Annotated § 49–3–366, which on a one-time basis attempted to equalize teachers' salaries in those school districts where the average salary was below $28,094 as of 1993,[7] but did not include teachers' salaries as a component of the BEP. The plan provided for state and local funds "in support of teachers' salary equity" to increase teacher compensation in school districts averaging less than $28,094 per year per instructional position. Tenn. Code Ann. § 49–3–366(a)(3). Although the plan required the State to pay the same percentage of salary equity funds for each school district as it pays toward the cost of classroom components of the BEP for each district and also required local govern-

ments to appropriate funds sufficient to pay their proportionate share,[8] it did not include provisions for annual review or cost determination of teachers' salaries under the BEP.

The plaintiffs filed this action arguing that the salary equity plan establishes an arbitrary floor for teachers' salaries unrelated to the BEP in violation of *Small Schools II,* and that the plan does not submit teachers' salaries to the annual review and cost determination process applicable to all of the other cost components under the BEP. Accordingly, the plaintiffs sought to enforce the directive in *Small Schools II* that teachers' salaries be included as a component of the BEP.

After a two-day hearing, the trial court found that the State had met its constitutional obligation to equalize teachers' salaries under Small Schools II and dismissed the action. In sum, the trial court reasoned that even though Small Schools II mandated that salary equalization be in accordance with the BEP formula, it did not demand that the legislature adhere strictly to the mechanisms of that plan.[9]

Thereafter, the plaintiffs filed a motion pursuant to Tennessee Code Annotated

---

7. The figure of $28,094 was determined by using the actual average instructional compensation package for each school system as of December 1, 1993. The salary figures used in the calculation included both state and local contributions. In order to exclude the extremes from the calculation, the top and bottom five percent of school systems were dropped from the calculation.

8. In fact, a school district is prohibited from commencing school in the fall "until its share of such allocation for teachers' salary equity ... has been included in the budget approved by the local legislative body." Tenn.Code Ann. § 49–3–366(a)(3). In addition, school districts receiving salary equity funds cannot use them for any purpose other than raising teachers' salaries. Tenn.Code Ann. § 49–3–

366(b). Further, salary equity funds, both state and local, must be reduced proportionally in all school districts in the event "state funds appropriated for teachers' salary equity are insufficient to meet the local public school systems' entitlements" under the statute. Tenn.Code Ann. § 49–3–366(c). The legislature has appropriated approximately $12 million dollars annually under Tenn.Code Ann. § 49–3–366 to increase and equalize teacher compensation.

9. The trial court concluded that "[i]n truth, the plaintiffs are complaining about the adequacy of teachers' salaries statewide when the effect of the General Assembly's action has been to equalize teachers' salaries statewide in accordance with the BEP plan."

§ 16–3–201(d) (Supp.2001) asking this Court to assume jurisdiction of the appeal, as it had in *Small Schools II,* on the grounds that the case is one of unusual public importance in which a special need for an expedited decision exists and which involves issues of constitutional law. The plaintiffs argued in their motion that the State had not complied with this Court's directive in *Small Schools II* that teachers' salaries be included in the BEP formula.

We granted the motion and now hold that the salary equity plan in Tennessee Code Annotated § 49–3–366 fails to comport with the State's constitutional obligation to formulate and maintain a system of public education that affords substantially equal educational opportunity to all students. We come to this conclusion because the plan does not include teachers' salaries as a component of the BEP necessary to provide a basic education, while including superintendents, principals, librarians, and other personnel, and does not equalize teachers' salaries according to the BEP formula inasmuch as it contains no mechanism for cost determination or annual cost review of teachers' salaries.

## ANALYSIS

### A.

The main issue throughout these appeals since 1988 has been whether the legislature has complied with its constitutional obligation to maintain and support a system of public schools that affords substantially equal educational opportunities to all students in this state. The resolution of the present appeal in large part begins with our statement in *Small Schools II* that the "exclusion of teachers' salary increases from the equalization formula is of such magnitude that it would substantially impair the objectives of the plan; consequently, the plan must include equalization of teachers' salaries according to the BEP

formula." *Small Schools II,* 894 S.W.2d at 738.

The plaintiffs assert that the salary equity plan amounts to little more than an arbitrary floor for teachers' salaries, unrelated to the BEP, in violation of our ruling in *Small Schools II.* They argue that the legislature enacted the plan as a "token" supplement to the BEP and, as such, failed to comply with the directive in Small Schools II that teachers' salaries be made a component of the BEP formula. The plaintiffs also assert that the plan violates equal protection because Tennessee Code Annotated § 49–3–366 does not provide for cost determination or annual cost review of salaries, as do BEP components, and that the same large disparities in teachers' salaries that existed when *Small Schools II* was decided still exist today. Thus, the plaintiffs argue that the legislature has not corrected the disparities in teachers' salaries, and they seek an order from this Court directing the legislature to make teachers' salaries a component of the BEP, subjecting salaries to annual cost determination and review like other components of the BEP.

The defendants concede that the legislature did not make teachers' salaries a component of the BEP by enacting the salary equity plan. The defendants also agree that there is no provision in the plan to increase the target salary of $28,094 and that there is no annual review or cost determination of teachers' salaries, as is performed with all of the other components under the BEP. The defendants nonetheless contend that the State has complied with the mandate of *Small Schools II* to achieve substantially equal educational opportunities by creating a salary equity plan and by using part of the methodology of the BEP formula in setting minimum salaries under Tennessee Code Annotated § 49–3–306.

## B.

Turning to the merits of this appeal, we recognize that the purpose of the salary equity plan was to increase and support teacher salary equity,[10] and that there are some similarities between the salary equity plan and the BEP primarily involving the distribution of funds and regulation of local school districts. For instance, the salary equity plan set out in Tennessee Code Annotated § 49–3–366 requires the State to pay the same percentage of salary equity funds for each school district as it pays toward the cost of classroom components of the BEP for each district,[11] Tenn. Code Ann. § 49–3–366(a)(3), and it requires local governments to appropriate funds sufficient to pay their proportionate shares.[12] In addition, school districts receiving salary equity funds cannot use them for any purpose other than raising teacher salaries, just as funds disbursed under the BEP must be spent on the basic education components that comprise that

plan. Tenn.Code Ann. §§ 49–3–366(b), 49–3–351(c).[13] Finally, the salary equity plan, like the BEP, attempts to ensure that the amount of state funds received by a local school system will not depend on the amount the local government collects or appropriates for its schools. *See Small Schools II*, 894 S.W.2d at 737; *see also* Tenn.Code Ann. § 49–3–356.

The salary equity plan, however, is different from the BEP; indeed, it is the differences that are critical in addressing the constitutional issue raised in this case. As noted above, for example, a key feature of the BEP is that the actual cost of each of the forty-three components is determined annually, and the formula itself is reviewed each year by state officials, including the legislature, so that adjustments can be made for improvements in the system.[14] *Small Schools II*, 894 S.W.2d at 736. Thus, unlike the prior funding scheme found to be constitutionally defi-

---

**10.** Funds appropriated under the salary equity plan are for the "support of teachers' salary equity," and "compensation improvement" under the plan can be in the form of salaries, employer-paid health insurance premiums, or both. Tenn.Code Ann. § 49–3–366(a)(3),(b).

**11.** Under the BEP, the State's share of classroom components is seventy-five percent, and the local school districts' share is twenty-five percent. Tenn.Code Ann. § 49–3–356.

**12.** The BEP provides that "[e]very local government shall appropriate funds sufficient to fund the local share of the basic education program." Tenn.Code Ann. § 49–3–356. The salary equity plan similarly provides that "[e]very local government shall appropriate funds sufficient to fund the local share of the allocation for teachers' salary equity established in this section." Tenn.Code Ann. § 49–.3–366(a)(3).

**13.** Under the BEP, "[a]ll funds generated for the basic education program shall be spent on basic education program components." Tenn.Code Ann. § 49–3–351(c). Under the salary equity plan, "[a]ny [local school district] that receives funds for teachers' salary

equity ... shall apply such funds to establish a schedule that raises the average compensation package" of teachers. Tenn.Code Ann. § 49–3–366(b).

**14.** As we explained in *Small Schools II*, "[t]he formula whereby the component parts of the [BEP] are determined is reviewed annually by a BEP review board, which includes the Commissioner of Education, the Commissioner of Finance and Administration, representatives of various local school systems, representatives of professional education organizations, and other members designated by the State Board of Education. After review by the Board of Education, the BEP formula may be adjusted to reflect changes whereby the system can be improved. However, the components of the plan ... cannot be changed without the approval of the Commissioner of Education and the Commissioner of Finance and Administration, and the revised formula must be approved by resolutions of the Senate and House of Representatives before any change can become effective." 894 S.W.2d at 736.

cient in *Small Schools I* (the TFP), the BEP reflects the variations in the costs of providing educational programs and services throughout the State. *Id.* In contrast, the salary equity plan contains no mechanism for cost determination or annual cost review, a flaw admitted by the defendants. The TFP was likewise unrelated to the costs of providing programs and services by the local schools, and the plan was declared unconstitutional. *Id.*

We can think of no rational basis, and the defendants have not suggested one, for structuring a basic education program where all of its components, including salaries for custodians, secretaries, nurses, librarians, social workers, principals and their assistants, assessment personnel, coordinators, supervisors, psychologists, and superintendents, are cost-driven, except for the largest and most important component of all, the cost of providing teachers. It seems to us, as we said in *Small Schools II*, that the rationale for cost determination and annual review of the BEP components applies with equal if not greater force to teachers' salaries, for it is undeniable that teachers are the most important component of any effective education plan, and that their salaries, a major item in every education budget, are a significant factor in determining where teachers choose to work. *Small Schools II*, 894 S.W.2d at 738. We recognized this fact seven years ago in *Small Schools II*, and we strongly reiterate it again today. *Id.*

Likewise, we recognized in *Small Schools II* that teacher salaries are an indispensable part of any constitutional funding plan, and that no part of that plan can be compromised without destroying the integrity and effectiveness of the entire plan. *Id.* Thus, although the salary equity plan has some similarities to the BEP it does not include an indispensable and fundamental part of the BEP plan,

*i.e.,* cost determination and annual cost review of all components, including teachers' salaries. Therefore, the State has not complied with the unambiguous finding in *Small Schools II* that a constitutional plan "must include equalization of teachers' salaries according to the BEP formula." *Id.* If the costs associated with hiring custodians, secretaries, nurses, librarians, social workers, principals and their assistants, assessment personnel, coordinators, supervisors, psychologists, and superintendents are components necessary "for [Tennessee] schools to succeed," surely it is undeniable that the cost of teachers is a component necessary for Tennessee schools to succeed. To state the obvious, teachers are an absolutely essential school resource.

The lack of cost determination and periodic cost review of teachers' salaries is a problem of constitutional dimensions today and will constitute a much larger problem over time, given that the salary equity plan is based solely on average teacher compensation as of 1993, or $28,094. Indeed, the average teacher salary in Tennessee as of 1998–1999 was $31,894 according to the parties' joint statement of undisputed facts; $35,273 according to a report prepared by the BEP Review Committee; and $36,896 according to a report produced by the Department of Education. Whatever the average salary may have been in 1998–1999, it is clear that the target salary in the equity plan bears no relationship to the current, actual cost of providing teachers as this opinion is written in 2002, leaving a gap that will widen with each passing year. Moreover, the record reveals that a top priority of the BEP Review Committee in 2000 was to obtain funding for teacher salaries based on *actual* salary data, rather than the state's minimum salary schedule.

In short, we hold that the lack of teacher salary equalization according to the

BEP formula continues to be a significant constitutional defect in the State's funding scheme. We have now held on two occasions since 1988 that the legislature's constitutional mandate is to maintain and support a system of public education that affords substantially equal educational opportunities to all students. Although we have left policy considerations such as the funding and level of salaries to the legislature,[15] the constitutional mandate has not changed. Moreover, whatever mechanism is chosen by the legislature, it must comport with the principles we have been espousing since the inception of the *Small Schools* saga. Until that mandate is met, the inherent value of education will not be fully realized by all students in the state, regardless of where they live and attend school, and the students of Tennessee will continue to be unconstitutionally denied substantially equal educational opportunities.

### C.

The State maintains that aside from the salary equity plan under Tennessee Code Annotated § 49–3–366, salaries have been equalized because all public school teachers have a minimum salary based on training and experience factors. Specifically, the Commissioner of Education, with the approval of the State Board of Education, annually formulates a mandated salary schedule applicable to all licensed teachers, taking into account training and experience. Tenn.Code Ann. § 49–3–306(a) (Supp.2001). Local school systems can supplement teachers' salaries with non-BEP funds from their own local sources, but the State's salary schedule represents a minimum salary statewide. Tenn.Code Ann. § 49–3–306(b) (Supp.2001).

The State's contention that salaries have been equalized because all public school teachers have a minimum salary based on training and experience factors is unconvincing. Tennessee Code Annotated § 49–3–306 has been the law since 1977. Assuming the State has been using the salary schedule mandated by that statute all along, particularly prior to *Small Schools II*, the State's reliance on it does little to help its cause. In fact, we alluded to Tennessee Code Annotated § 49–3–306 in *Small Schools II* when we described how teacher salaries were calculated, 894 S.W.2d at 738,[16] and we observed in *Small Schools I* that making adjustments based on training and experience benefitted wealthier school districts because more funds were channeled to districts where better trained and experienced teachers worked, 851 S.W.2d at 143. Most importantly, Tennessee Code Annotated § 49–3–306 does nothing to address the problem of

15. We recognize, for example, that Small Schools II did not specifically address whether the legislature could devise another way of addressing the issue of teachers' salaries besides making salaries a component of the BEP itself, although that continues to seem to us to be the simplest and most effective way of solving the problem. Indeed, the first time this case was before us, this Court observed that the means whereby the state could achieve its constitutional obligation to provide substantially equal educational opportunities is a legislative prerogative and that the legislature's power in this regard is extensive. *Small Schools I*, 851 S.W.2d at 141, 156. Similarly, we observed in *Small Schools II*

that the architects of the BEP could have made teachers' salaries "a separate category of funding." 894 S.W.2d at 738.

16. Without making teachers' salaries a component of the BEP, the allocation for teachers' salaries to each school district is the product of the amount of the school district's average teacher salary, based on the State's salary schedule, plus the mandated local supplement, multiplied by the number of teaching positions in the district generated by the BEP teacher-student ratio. *Small Schools II*, 894 S.W.2d at 738.

having an education funding system consisting entirely of cost-driven components except for the most important component of providing teachers.

### D.

Finally, we address the intervenors' argument that the plaintiffs have not shown any injury resulting from the current funding method. According to the intervenors' claim, teacher salary disparities have decreased since 1995 when *Small Schools II* was decided. In addition, the intervenors allege that student-teacher ratios in the plaintiffs' districts are now lower than the statewide average, and that teachers in the plaintiffs' districts have, on average, only about one year less experience than teachers elsewhere in the State. They also claim that student graduation rates and test scores are now about the same, and in some instances better, than statewide averages, and that drop-out rates for students in the plaintiffs' districts are less than the statewide average. The intervenors therefore argue that the plaintiffs are no longer deprived of substantially equal educational opportunities.

Several problems exist with the intervenors' fact-based argument that the plaintiffs are no longer being deprived of substantially equal educational opportunities. The first problem is that the trial court made no factual findings on any of the matters that form the basis of the intervenors' contentions. The second and more compelling problem is that this Court already has decided the issue of whether a constitutional deprivation of educational opportunity occurred. The focus at this point is the remedy, not the wrong. It seems to us that the intervenors are essentially attempting to retry the case by raising issues on which this Court has already ruled.

The third problem with the intervenors' position is that the record supports the plaintiffs' argument that for the most part, the same disparities in teachers' salaries that existed when *Small Schools II* was decided still exist today. For example, in 1995, the City of Alcoa paid teachers an average of $40,672, while Jackson County paid teachers an average of $23,934, a difference of $16,738. In 1997, Oak Ridge paid its teachers an average of $42,268, while in Monroe County the figure was $28,025, a disparity of $14,243. In 1998–1999, the disparity between Oak Ridge and Monroe County grew to $14,554. Thus, wide disparities still exist, and it takes little imagination to see how such disparities can lead to experienced and more educated teachers leaving the poorer school districts to teach in wealthier ones where they receive higher salaries.[17] In the end, the rural districts continue to suffer the same type of constitutional inequities that were present fourteen years ago when this litigation began.

In reaching the conclusion that the salary equity plan is constitutionally deficient, we are mindful that teachers' salaries will not be identical in every school district. We also stress that our opinion does not hinge upon the adequacy of the average salary relied upon by the legislature, *i.e.,* "$28,094," which the plaintiffs characterize variously as an "inadequate floor," "artificial," "erroneous," and "extremely outdated." It is not the business of the courts to decide how salaries are funded or at what level teachers should be compensated, for

---

**17.** The intervenors cite a survey of teachers suggesting that 21% of teachers moving to another district to teach did so primarily because of salary considerations. However, the same study reveals that 61.7% of those surveyed cited salary as the reason they preferred working in their current school system over their former one, and 53.3% said that salary influenced their decision to migrate from one system to another.

it is the legislature who "speaks for the people on matters of public policy" such as these. *See Van Tran v. State,* 66 S.W.3d 790, 804 (Tenn.2001). In addition, nothing in the law prevents a local school system from supplementing teachers' salaries from its own local non-BEP funds when such funds are in addition to its local BEP contribution. As such, some disparities in teachers' salaries from school district to school district will exist. In short, determining how to fund teachers' salaries and the appropriate level of those salaries are choices for the legislature to make, assuming of course that the legislature discharges its powers in a manner that comports with the Constitution.

As we recognized in *Small Schools I,* local spending on education will also vary due to differences in "geographical features, organizational structures, management principles and utilization of facilities," as well as other "factors that bear upon the quality and availability of educational opportunity [which] may not be subject to precise quantification in dollars." 851 S.W.2d at 156. The critical point, however, is that the educational funding structure be geared toward achieving equality in educational opportunity for students, not necessarily "sameness" in teacher compensation. *See id.* The objective of teacher salary equalization is to provide substantially equal opportunities for students, not teachers. While this case focuses largely on the methodology used to fund teachers' salaries, we realize that many elements, of which funding is but one, must come together in order for Tennessee schools to succeed and for children in this State to receive a substantially equal educational opportunity.

### CONCLUSION

After reviewing the record and applicable authority, we find that the salary equity plan under Tennessee Code Annotated § 49-3-366 does not include equalization of teachers' salaries according to the BEP formula because it contains no mechanism for cost determination or annual cost review of teachers' salaries, unlike the BEP approved in *Small Schools II.* This significant defect substantially undermines the effectiveness and legality of the plan and continues to put the entire plan functionally and legally at risk. In our view, no rational basis exists for structuring a basic education funding system consisting entirely of cost-driven components except for teacher salaries. Thus, the lack of teacher salary equalization according to the BEP formula continues to be a significant constitutional defect in the current funding scheme. Accordingly, we hold that the salary equity plan fails to satisfy the State's constitutional obligation to formulate and maintain a system of public education that affords substantially equal educational opportunity to all students. Therefore, the trial court's judgment dismissing the case is reversed, and the case is remanded for such further proceedings as may be appropriate. Costs of this appeal are taxed to the defendants and intervenors for which execution may issue if necessary.