FILED

04/03/2017

Clerk of the
Appellate Courts



IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 21, 2017 Session

**STATE EX REL. THE METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY, TN v. STATE OF TENNESSEE,
ET AL.**

**Appeal from the Chancery Court for Davidson County**
**No. 16-979-III        Ellen H. Lyle, Chancellor**

_____

**No. M2016-02036-COA-R3-CV**
_____

The Metropolitan Government of Nashville and Davidson County filed a petition for a writ of mandamus against the State, seeking full funding for English language learner teachers and translators in accord with the ratios found in Tennessee Code Annotated § 49-3-307(a)(7). The trial court denied the writ of mandamus. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

J. Brooks Fox, Lora Barkenbus Fox, Catherine J. Pham, Nashville, Tennessee, for the appellant, Metropolitan Government of Nashville and Davidson County.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Blumstein, Solicitor General; Stephen A. Hart, Special Council, Jay C. Ballard, Deputy Attorney General, Joseph P. Ahillen, Assistant Attorney General, Laura Miller, Nashville, Tennessee, for the appellees, State of Tennessee and Tennessee General Assembly.

**OPINION**

BACKGROUND

Some history may be beneficial to assessing the issue presented in this case. This is another case about education funding in Tennessee. The first case was brought in 1988. In that case, *Tennessee Small School Systems v. McWherter*, 851 S.W.2d 139, 141 (Tenn. 1993) ("*Small Schools I*"), an unincorporated association of small school districts, local

education officials, parents, and students sued state officials seeking a declaration that Tennessee's school funding statutes were unconstitutional and that the state be required to create a new funding system that met constitutional standards. Nine urban and suburban school systems intervened maintaining that, if the issue was justiciable, then any remedy should consider differences in costs and needs among the various school systems. *Small Schools I*, 851 S.W2d at 141. The trial court ruled in favor of the plaintiffs and found the education funding system violated the Tennessee Constitution's equal protection requirements. *Id*. at 142. The defendants and intervenors appealed. The Court of Appeals reversed the trial court. *Id*. The Tennessee Supreme Court granted certiorari. After finding the matter justiciable, the Supreme Court determined that the education and equal protection provisions of the Tennessee Constitution require "a public school system that provides substantially equal educational opportunities to the school children of Tennessee." *Id*. at 148, 156. The appropriate remedy was to "be fashioned by the General Assembly." *Id*. at 156.

Before the Supreme Court's final ruling in *Small Schools I*, the General Assembly passed the Education Improvement Act of 1992. 1992 PUB. ACTS, ch. 535. The act created the Basic Education Program ("BEP"), which, as the Supreme Court explained in a subsequent case, was "designed to provide, when fully funded, the programs and services essential to a basic education for public school children in grades K through 12 throughout the State." *Tenn. Small Sch. Sys. v. McWherter*, 894 S.W.2d 734, 736 (Tenn. 1995) ("*Small Schools II*"). The act also contained governance and accountability provisions. *Id*. *Small Schools II* was filed because teachers' salaries were not included in the equalization scheme and full funding of the BEP would not occur until fiscal year 1997-98. *Id*. at 738. Ultimately, the Tennessee Supreme Court ruled that the BEP must include equalization of teacher salaries and that phasing in full funding was acceptable. *Id*.

The final case of the Small Schools Trilogy is *Tennessee Small School Systems v. McWherter*, 91 S.W.3d 232 (Tenn. 2002) ("*Small Schools III*"). In reaction to *Small Schools II*, the General Assembly "enacted the salary equity plan in Tennessee Code Annotated § 49-3-366, which on a one-time basis attempted to equalize teachers' salaries in those school districts where the average salary was below $28,094 as of 1993, but did not include teachers' salaries as a component of the BEP." *Small Schools III*, 91 S.W.3d at 237 (footnote omitted). The Tennessee Supreme Court determined that the new State law did not "comport with the State's constitutional obligation to formulate and maintain a system of public education that affords substantially equal educational opportunity to all students." *Id*. at 238. The Supreme Court reached this decision

> because the plan does not include teachers' salaries as a component of the BEP necessary to provide a basic education, while including superintendents, principals, librarians, and other personnel, and does not equalize teachers' salaries according to the BEP formula inasmuch as it

contains no mechanism for cost determination or annual cost review of teachers' salaries.

*Id*.

CURRENT LITIGATION

This litigation focuses on the 2016 amendments to Tennessee Code Annotated § 49-3-307(a)(7), which states: "The formula shall provide funding for English language learner students at a ratio of one to twenty (1:20) and one to two hundred (1:200) for teachers and translators, respectively."[1] In May 2016, the Tennessee Department of Education wrote a letter to the Metropolitan Government ("Metro"), stating that the funding for English language learner ("ELL") students in the upcoming fiscal year would be at a ratio of 1:25 for teachers and 1:250 for translators. When asked why the funding did not match the statute, Maryanne Durski, Executive Director of the Office of Local Finance in the Department of Education responded as follows:

> Thank you for your letter dated June 1, 2016 regarding the FY17 May BEP estimate for Metropolitan Nashville Public Schools. You are correct that TCA 49-3-307(a)(7) provides funding ratios for ELL at 1:20 teachers and 1:200 translators. However, TCA 49-3-307(b) states that "the changes in components or factors of the BEP implemented by this act shall be implemented in accordance with funding as made available through the general appropriations act". The general appropriations act for FY17 provided sufficient funds to move the funding ratios to 1:25 and 1:250 respectively. These ratios will be reviewed against available funding in future years to determine when additional changes may be made in order to achieve the goal of funding ratios of 1:20 and 1:200.

The last two sentences indicate that the ratios were an improvement and that the money for ELL teachers and translators was being phased in.[2]

Metro filed a petition for a writ of mandamus, asserting that it was entitled to receive full funding for ELL teachers and translators at the statutory ratio. The chancellor found that the issue in this case had not been decided in the prior *Small Schools* cases. Consequently, the matter did not meet the criteria for a writ of mandamus. Metro appealed.

---

[1] Although 2016 PUB. ACTS, Ch. 1020 rewrote the entire code section, subparagraph (a)(7) is identical to former subparagraph (a)(6).

[2] The last two sentences are consistent with the legislative history, in which Representative Mark White stated that an additional $14 million was included for ELL in the budget to reach the 1:25 and 1:250 ratio "with the idea of eventually going down to the 20 and 200 to 1." House floor discussion of HB 2574, remarks of Representative Mark White, April 11, 2016.

ANALYSIS

The law of mandamus in Tennessee has been described as "well-settled." *State ex rel. Weaver v. Ayers*, 756 S.W.2d 217, 220 (Tenn. 1988). "'It is the universally recognized rule that mandamus will only lie to enforce a ministerial act or duty and will not lie to control a legislative or discretionary duty.'" *Id*. at 221 (quoting *Lamb v. State ex rel. Kisabeth*, 338 S.W.2d 584, 586 (Tenn. 1960) (citation omitted)). The difference between ministerial duties and discretionary duties is generally:

> where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial, but where the act to be done involves the exercise of discretion and judgment it is not deemed merely ministerial.

*Id*. (quoting *State ex rel. Millers Nat'l Ins. Co. v. Fumbanks*, 151 S.W.2d 148, 150-51 (Tenn. 1941) (citation omitted)). The purpose of mandamus is to execute, not to adjudicate. *Id*. If the claim or right for which mandamus is sought is doubtful or uncertain, mandamus is not the proper remedy. *Id*. In sum,

> "The writ of mandamus will not lie to control official judgment or discretion, but it is the proper remedy where the proven facts show a clear and specific legal right to be enforced, or a duty which ought to be and can be performed, and relator has no other specific or adequate remedy."

*Id*. (quoting *State ex rel. Ragsdale v. Sandefur*, 389 S.W.2d 266, 269 (Tenn. 1965) (citations omitted)). Thus, a writ of mandamus may only be issued by a court where the plaintiff's right to the relief sought is "clearly established," the defendant has a "clear duty to perform the act" at issue, and "'no other plain, adequate, and complete method of obtaining the relief'" exists. *Manhattan, Inc. v. Shelby Cnty*., No. W2006-02017-COA-R3-CV, 2008 WL 639791, at *7 (Tenn. Ct. App. Mar. 11, 2008) (quoting *Cherokee Country Club v. City of Knoxville*, 152 S.W.3d 466, 479 (Tenn. 2004)); *see also State ex rel. Motlow v. Clark*, 114 S.W.2d 800, 802-03 (Tenn. 1938) ("'Mandamus' is a remedy through which a public officer, charged by law with a duty ministerial in character, may be compelled to perform it.").

It appears to us that none of the requirements for the issuance of a writ of mandamus are met in this case. To prove the plaintiff's right to funding at the statutory ratios and the defendants' duty to fund those ratios, Metro maintains that the BEP establishes the statutory minimum of programs and services necessary to meet constitutional requirements. Metro bases its position on the definition of "Basic Education Program" in Tenn. Code Ann. § 49-3-302(3), which states that the BEP "is the funding formula for the calculation of kindergarten through grade twelve (K-12)

education funding necessary for our schools to succeed."[3] Although the statutes provide guidance, the State Board of Education adopts the formula and guidelines "for the fair and equitable distribution and use of public funds among public schools . . . ." Tenn. Code Ann. § 49-1-302(a)(4)(A); *see also* Tenn. Code Ann. § 49-3-351(b) ("the only procedure for the funding of the BEP . . . shall be as provided in the formula [devised by the state board of education].").

The General Assembly enacted the language of Tenn. Code Ann. § 49-3-302(3) in 2004. It has never been interpreted by any appellate court. What did the General Assembly mean by "succeed"? Is succeeding equated with satisfying minimum constitutional standards? Or is it "the development of an excellent education program"? *Small Schools II*, 894 S.W.2d at 739.

Metro also emphasizes the following language from *Small Schools II*: "Adequate funding is essential to the development of an excellent education program." *Id.* 738-39. Metro equates adequate funding with full funding of all parts of the BEP formula. This issue, however, has never really arisen. *Small Schools II* presumed that full funding would be provided: "[The BEP] is designed to provide, when fully funded, the programs and services essential to a basic education for public school children in grades K through 12 throughout the State." *Id.* at 736. In *Small Schools II*, the issue of less than full funding was presented only in the context of phasing in full funding over several years. There has never been an examination of whether less than full funding of an item or items in the formula may still meet constitutional requirements. That examination cannot happen in the context of a mandamus action and cannot happen on this record. To consider that issue, the record would have to include evidence of whether Metro actually needed more ELL teachers and translators beyond current state funding; whether the inclusion of a specific ratio in Tenn. Code Ann. § 49-3-307(a)(7) was intended by the General Assembly as an immediate standard, a goal for the future, or as purely aspiration; an analysis of the effect of Tenn. Code Ann. § 49-3-307(b)[4]; and, an examination of whether Tenn. Code Ann. § 49-3-307(a)(7) was added to the BEP in a manner contrary to that prescribed in Tenn. Code Ann. § 49-3-302 and Tenn. Code Ann. § 49-1-351(a)(3),

---

[3] The statutes are somewhat confusing. Tennessee Code Annotated § 49-3-302(3) states that the "'BEP' is the funding formula…," while Tennessee Code Annotated § 49-3-351(a) states that "[t]he programs funded through this formula [devised by the state board of education pursuant to § 49-1-302] are the Tennessee BEP."

[4] Tennessee Code Annotated § 49-3-307(b) states:

> Notwithstanding §§ 49-1-302, 49-3-351, and any other law to the contrary, the changes in components or factors of the BEP implemented by chapter 1020 of the Public Acts of 2016 shall be implemented in accordance with funding as made available through the general appropriations act.

Metro challenges the constitutionality of Tennessee Code Annotated § 49-3-307(b), but we need not address that issue in this proceeding. We note that Tennessee Code Annotated § 49-3-351(b) contains similar language that was in effect but not discussed in *Small Schools II* and *Small Schools III*.

and the effect, if any, of a deviation from the previously defined statutory process for revising the BEP.

Metro has not established that there is "'a clear and specific legal right to be enforced,'" or a corresponding duty on the part of the State to fully fund ELL. *State ex rel. Weaver*, 756 S.W.2d at 221 (quoting *Sandefur*, 389 S.W.2d at 269)). Metro has an adequate remedy for its alleged wrong. That remedy is a funding lawsuit that addresses the unanswered questions raised above through the development of the facts necessary for a decision. Mandamus proceedings were not designed to provide answers to the myriad questions swirling around the adequate funding of BEP items.[5]

CONCLUSION

This case is not appropriate for a mandamus proceeding. The other issues raised by the parties are pretermitted by this ruling. The judgment of the trial court is affirmed. Costs of appeal are assessed against the appellant, Metro, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[5] Without having to provide a definitive answer to whether a mandamus would ever be appropriate in such a case, we note that *Small Schools I* quoted *Biggs v. Beeler*, 173 S.W.2d 946, 948 (Tenn. 1943), for the proposition that "our Courts have not hesitated to strike down legislative action which disregarded, transgressed and defeated, either directly or indirectly, mandates of the organic and fundamental law laid down in the Constitution." *Small Schools I*, 851 S.W.2d at 148. *Biggs*, in turn, quoted *Scopes v. State*, 289 S.W. 363, 366 (Tenn. 1927), in which the court stated "while '*in no case can the court directly compel the Legislature to perform its duty,*' i.e. carry out a mandate of the Constitution, 'in a plain case the court can prevent the Legislature from transgressing its duty under the Constitution by declaring ineffective such a legislative act.'" (emphasis added). *Biggs*, 173 S.W.2d at 947.